JUDITH D. THOMPSON v. ISRAEL C. SMITH.

*Mortgage—Description—Evidence—Estoppel—Foreclosure— Parties.*

1. Where, on the trial of an action of trespass, the question of fact in issue is whether the land claimed to have been trespassed upon is actually included in a parcel of land described in a mortgage executed by the plaintiff's grantor to the defendant, it is not competent for the plaintiff to show by parol testimony that the mortgagor pointed out to the mortgagee the boundary lines of the lands to be included in the mortgage, and informed him that the land in controversy was not to be included therein.

2. A grantee is estopped from disputing his deed, in which, as also in all prior conveyances, the land is described as a part of "Block B" in a certain village, by showing that it is not a part of that block.

3. The right of possession of a subsequent grantee of mortgaged premises, whose deed is not recorded until after the filing of *lis pendens* in a suit brought to foreclose the mortgage, but who is in possession when the suit is commenced, will not be cut off by the foreclosure proceedings, nor by the entry of the mortgagee thereunder.

4. The foreclosure proceedings will not be given that effect by a stipulation of the grantee that they are regular, made in an action of trespass brought against the mortgagee for making such entry.

Error to Newaygo. (Palmer, J.) Argued April 19 and 20, 1893. Decided June 30, 1893.

Trespass. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*More & Wilson*, for appellant, contended:

1. Parol evidence is admissible to identify the subject-matter of a deed, to determine locations, and define boundaries; citing Whart. Ev. §§ 942–944; 1 Greenl. Ev. § 287; *Purkiss v. Benson*, 28 Mich. 538; *Twogood v. Hoyt*, 42 Id. 609, 613.

*Fletcher & Wanty*, for defendant.

LONG, J. This is an action of trespass. The lands in controversy are described in the declaration as—

" Commencing at a point on the south bank of the Muskegon river, where the east line of River street, produced, intersects the river; thence westerly, along the bank of the said river, to the old channel of Brooks creek; thence southerly, along the easterly bank of said creek, to the right of way owned by the Chicago & West Michigan Railroad Company; thence easterly, on the north line of said railroad company's right of way, and to the west line of block four; thence north, along the west line of block four, to a point which would intersect the south line of Wood street, if produced; thence east on the south line

of Wood street, produced, to the west line of River street; thence north-westerly, along the west line of River street, to the north line of Water street; thence east, on the north line of Water street, to the east line of River street; thence north-westerly along the east line of River street, produced, to the place of beginning."

The cause was commenced in the Newaygo circuit court. Defendant appeared, and with his plea of the general issue gave notice that the title to the premises described in the declaration at the time of the acts complained of was vested in one James W. Converse, and that any acts that were done by the defendant were done as the agent of said Converse. The cause was tried before a jury, who returned a verdict in favor of the defendant.

The principal question on the trial was whether the land in controversy is a part of block B. The plaintiff, on the argument here, presents a plat which it is claimed shows that the western boundary of block B is at a line extended northerly from the line between lots 6 and 7 of block C; while the defendant presents a plat which it is claimed shows that block B is not thus bounded, but that it extends westward, and includes the lands in controversy. Reference to the two plats, which were used on the argument in this Court, does not settle the controversy. One is a copy of the plat of the village. This village plat was offered in evidence by the defendant on the trial, and excluded. It was offered, as defendant's counsel claim, for the purpose of showing that no particular piece of land was platted as block B, but that block B was the designation of a parcel of land in the village of Newaygo whose boundaries and limits were as well known and as well defined as those of any block in the village plat, and that the parcel described in the declaration is a part of that block. It is conceded that the village plat was never properly authenticated, but the one offered in evidence was the only one made or recorded, as shown by the record in this case. The pro-

prietors were John A. Brooks, John A. Brooks, Jr., and Sarell Wood. By reference to this plat it is seen that block B has no definite boundaries, though there appears to be a line extended northerly from Pine or River street to the Muskegon river. If this line is to be taken as the westerly boundary of block B, then that block has a definite boundary, as it would extend from the range line on the east to this line extended; but nowhere upon the plat or in the proceedings is it shown that that line is extended as the westerly boundary of block B. Neither is it insisted by either of the parties to be so. Defendant claims that block B extends to Brooks creek on the west, and includes the land in controversy. Plaintiff's counsel, on the other hand, contend that the westerly boundary of that block is as shown on a plat presented by them by an extended line between lots 6 and 7, block C, to the Muskegon river, and that all the lands lying westerly of that line and extending to Brooks creek never were platted. In other words, plaintiff's counsel contend that the lands upon the plat of the village of Newaygo between block A and Brooks creek are divided into three parcels; that the parcel between block A and the extended line between lots 6 and 7 of block C to the Muskegon river is properly block B; that the second parcel lies between the westerly boundary of block B and Pine or River street extended to the Muskegon river; and that westerly of that parcel is the third parcel, which includes all the lands between Pine or River street extended and Brooks creek, except what is shown on plaintiff's exhibit as block 4. This third parcel, as plaintiff describes it, is the piece in controversy. It is conceded that what is called on the plats "Pine Street" is in many conveyances called "River Street."

The plaintiff, to maintain her case, on the trial called David P. Clay as a witness, and he testified substantially that he knew the land in controversy, and at one time he

claimed to own it; that such claim of ownership commenced in the spring or summer of 1871, and that he cultivated and cropped it. Counsel then offered in evidence a deed bearing date May 20, 1887, and recorded September 20, 1887, from David P Clay to the plaintiff. This deed describes certain lands in the village of Newaygo, and, among other descriptions, the land in controversy as "so much of block B as lies west of River street," as well as all of blocks 4 and 127, except certain parcels theretofore deeded. Plaintiff claims that she went into possession of this land the 1st of May, 1887, and continued in possession until April or May, 1889, and cut the grass for two years, but never lived upon the land. On May 21, 1889, she claims to have gone to the land, and found defendant, Smith, in possession. He rebuilt the fences, cut the grass, and cropped part of it. There are in all some 15 or 16 acres. It is undisputed that defendant went into possession in the spring of 1889, and is still in possession.

Defendant, on his part, not only claimed possession, but title to the premises. To prove his title he put in evidence a mortgage made by David P. Clay and wife to James W. Converse, dated December 15, 1877, and duly recorded two days afterwards, to secure the sum of $25,000. The land is described in the mortgage as "block B, village of Newaygo." The mortgage also covers other lands. It appears that this mortgage was foreclosed in the circuit court of the United States for the western district of Michigan, the *lis pendens* being recorded in the register's office of Newaygo county, May 30, 1887. The sale was made October 8, 1888, James W. Converse being the purchaser at the sale. Defendant, Smith, claims to be in possession as the agent of Converse, and sets up title in Converse under his notice. The deed on this foreclosure sale was offered in evidence by defendant. It contains the same description as found in the mortgage.

The land described in the declaration, it is claimed by the defendant, is the same as that covered by the Clay mortgage, and the same as in the deed on foreclosure to Converse. The deed was objected to on the ground that the plaintiff was not made a party to the foreclosure proceedings, and was never served with process in that case, and at the time of the sale notice of that fact was given. It was also claimed by plaintiff's counsel that the land sold under the foreclosure is not the same description as the land in controversy. The lands are described in the deed from Mr. Clay to the plaintiff as "so much of block B as lies west of River street, in the village of Newaygo," while the mortgage from Clay and wife to James W. Converse describes the property as all of block B, village of Newaygo, and other lands, and the deed on foreclosure describes the property the same as in the mortgage.

To show how the lands had theretofore been described, and how Mr. Clay derived his title, the defendant offered in evidence a deed from Wilder D. Foster, assignee in bankruptcy of Alexander Blake, to Mr. Clay, dated June 28, 1871, describing the lands as—

"That part of block B lying north of block 4 and west of said block and the Newaygo Company's land, and extending to Muskegon river; meaning all the meadow land extending from said block 4 and the line of River street north to Muskegon river and Brooks creek, * * * all in the village of Newaygo."

Several other deeds were also offered in evidence, tracing the title back through these mesne conveyances to John A. Brooks and Sarell Wood, showing title in them prior to the year 1857, and all of said deeds describing the lands in controversy as a part of block B of the village of Newaygo. The tax rolls were also offered in evidence for the various years from 1858 down to the time of the trial, showing that these lands were assessed for taxes during all that time as a part of block B, village of Newaygo.

Witnesses were also called who had known these lands for many years, and who were familiar with the village plat, and testified that they had never known that any of these lands remained unplatted on the south side of the Muskegon river and westward to Brooks creek. The plat itself does not define the boundaries of block B, but all the conveyances above referred to recognize the land in controversy as a part of it, and the deed under which the plaintiff claims describes it as such.

Plaintiff's counsel offered in evidence certain deeds and mortgages executed prior to 1857, in which these lands are described by metes and bounds. Some evidence was offered by the plaintiff, and excluded by the court, which, it is claimed, would tend to show that Clay, at the time of giving the Converse mortgage, pointed out to Converse the boundaries of the land the mortgage would cover, and the boundaries of block B. It was claimed from this that the parties to the mortgage never understood that the mortgage covered the land described in the declaration.

The court directed the jury that the fact was established that the plaintiff was not made a party to the foreclosure proceedings, and hence whatever proceedings were taken to foreclose could not deprive her of her title; that both parties derived their title through Mr. Clay, and that the title to the property described in the declaration was in Mr. Clay at the time of the execution of the mortgage, December 15, 1877; and that the evidence beyond dispute showed that the deed of May 20, 1887, was made by Mr. Clay, who had the legal title, and was delivered to the plaintiff, and she went into possession under it. "But," the court said, "the vital question is this: Do the premises described in the declaration include any portion of block B? and that is the question for you to determine from the evidence." The court further said: "There was a stipulation between the parties filed in this cause, to the effect

that all the proceedings to foreclose the mortgage were regular, and no claim can be made now of any irregularity." The court further charged the jury as follows:

"David P. Clay was the owner of the premises in question and other lands included in the mortgage under date of December 15, 1877. That was prior to the conveyance made by him to plaintiff in this action. She was a subsequent purchaser of the premises, and necessarily took them subject to the mortgage and the legal effect of the foreclosure proceedings, providing all the proceedings were regular, as stipulated by the respective parties to this mortgage; and the title obtained under and by virtue of the foreclosure proceedings would refer back to the execution of the mortgage, and give the purchaser such title to the premises covered by the mortgage as the mortgagor had at the time the mortgage was executed and delivered to the mortgagee. Now, the plaintiff, in order to make out her case under the declaration in this cause, introduces in evidence a deed, the date of which I have called your attention to, under date of May 20, 1887 (Mr. Clay at that time was the owner of the premises in question), to Mrs. Thompson, the plaintiff in this suit. Mrs. Thompson, the plaintiff in this suit, I will say to you, as I said before, went into possession of the premises under and by virtue of that deed; and there is no dispute in the testimony, and it is a conceded fact, that on or about the 8th day of April, 1889, the defendant in this action took possession of the premises, and has continued in possession of the premises ever since, and claims to hold and occupy the premises on account of his having had a superior title to that of the plaintiff in this action; and his title would be superior to that of the plaintiff in this action provided you find from the evidence in this case, as a matter of fact, that the premises mentioned in this declaration are included in block B, covered by the mortgage in question in this suit. So the question of fact for you to determine, and the vital question of fact in this case, is, do you find from the evidence, as a matter of fact, that the premises described in this declaration are the same as the premises described in the mortgage as block B?"

The court further charged:

"Then the first question for you to determine is, taking it as a conceded fact that at the time of the execution of

the mortgage Mr. Clay was the owner of the premises in question (and that is your basis), ascertain, then, gentlemen of the jury, from the evidence in this case, whether this block B, as described in this mortgage, covers the premises which the plaintiff in this action claims to have been trespassed upon; and if you find that it does, that is a defense to this action, and this plaintiff is not entitled to your verdict. If, in considering that question, gentlemen, you find the issue in favor of the plaintiff,—you find that the premises described in the declaration in this suit are not within the premises described in the mortgage as block B,—then the plaintiff would be entitled to your verdict; and in determining that question of fact you will take into consideration all the evidence in the case before you. Now, certain deeds have been introduced in evidence here on the part of the plaintiff, and also on the part of the defendant, dating as far back as November, 1853; certain mortgages have been introduced, certain tax rolls have been introduced in evidence, and a certain map has been introduced in evidence here; and these records and this map are all circumstances competent for you, gentlemen, to consider in determining this question of fact to which I have called your attention, either one way or the other. In the absence of direct proof as to where the boundary lines are, and as to whether or not the land described in this declaration is included in the description of land mortgaged, it would be competent for you, and your duty, to take into consideration these deeds of conveyance. How did the parties to the instruments understand it,—the grantors and grantees therein named? How did the parties who executed, and to whom the mortgages were executed, understand it? What was their understanding of block B? What land was included? You may take into consideration, and it is your duty so to do, also, the tax rolls which have been introduced in evidence. How did the parties—the assessor, the party who made the assessment, and the parties against whom the land was assessed—understand it? What was their understanding with reference to this matter, as to whether or not the lands described in the declaration were the same as the lands described in the mortgage as block B? Neither the tax rolls nor the deeds offered in evidence nor the mortgages are conclusive upon this question, but they are all matters proper for you to consider; they are circumstances in the case proper to be considered."

Reference need not be made to the several assignments.

of error.   It is evident from the whole record that the only question of fact in the case was submitted to the jury, and they have found that the lands in controversy are a part of block B.

It is contended that the court below was in error in excluding the testimony offered to show that Clay pointed out to Converse the boundary lines of the lands to be included in the mortgage, and that Converse was told that the lands in controversy were not to be included.   This was properly excluded.   The question under consideration on the trial was whether the lands in controversy were *actually* included in the Converse mortgage, and this question could be determined only by showing what were the boundaries of block B.   The parol testimony of what the understanding was as to what was to be included could not aid this question, and could not be used for the purpose of contradicting or changing the description in the mortgage.   The mortgage covered all of block B, and if this land was a part of block B it was included in the mortgage, whatever the understanding of the parties may have been about it; and parol evidence would not be admissible to change or vary the terms of the mortgage. The only question of fact arising in the case was whether the lands in controversy were a part of block B.   The jury found that issue in favor of defendant.

It appears without contradiction that the plaintiff's deed describes the land as a part of block B, and the Converse mortgage covers all of block B, and the deed on foreclosure describes it in the same way.   The plaintiff, then, by this record, is put in the attitude of making claim to this land, and attempting to prove her title by showing that it is not a part of block B, while the deed under which she herself claims describes it as a part of block B, and all other conveyances dating back to 1857 so describe it, and it has been so assessed during all that time.   Whatever

title she had was derived from David P. Clay under this deed. She cannot now be heard to dispute the deed, and show in this action that, though the deed describes the land as a part of block B, it is not in fact part of that block. *Payne v. Atterbury,* Har. Ch. 414; *May v. Tillman,* 1 Mich. 262; *White v. Smith,* 37 Id. (Ann. ed.) 290, 296, and note; *Shotwell v. Harrison,* 22 Id. 410; *Case v. Green,* 53 Id. 615.

Plaintiff's deed, however, was given prior to the filing of the *lis pendens* in the foreclosure proceedings, and there is some evidence that she went into possession of the property under the deed prior to that time. The court below assumed that, inasmuch as the stipulation between the parties to this cause recited that the foreclosure proceedings were regular, therefore whatever rights the plaintiff had in the premises under her deed were cut off and foreclosed by that proceeding. The plaintiff was not made a party to the foreclosure, and consequently it was a matter of no concern to her whether the foreclosure proceedings were regular or not. The right to possession was not foreclosed, and could not be cut off, by that proceeding, or the entry of the defendant claiming under the foreclosure of the Converse mortgage. 2 Jones, Mortg. §§ 1412, 1413. The court below was therefore in error in that part of the charge. Under these facts, the court should have directed the verdict in favor of the plaintiff.

Judgment reversed, and a new trial ordered.

The other Justices concurred.