M. J. KELLY, EJ.
(dissenting). On appeal, the majority concludes that the trial court abused its discretion when it determined that defendants, K.A.M. Transport, Inc., M & Y Express, Inc., and Aly Mohamed Maarouf, had not established grounds for subjecting plaintiff Karen Burris to additional invasive medical examinations and, on that basis, denied defendants’ motion to compel Burris to submit to the requested examinations. Under the facts of this case, I cannot agree that the trial court abused its discretion. Therefore, I must respectfully dissent.
Our Supreme Court has long recognized that Michigan courts have the discretion to direct a party to submit to examination when the party’s injuries are at issue. See Logan v Agricultural Society of Lenawee Co, 156 Mich 537, 541-542; 121 NW 485 (1909) (holding that the trial court did not abuse its discretion when, relying on the plaintiffs physician’s affidavit that it would be detrimental to plaintiffs wellbeing, it denied the defendant’s motion to compel the plaintiff to submit to a medical examination); Graves v City of Battle Creek, 95 Mich 266, 268; 55 NW 886 (1893) (holding that trial courts have the discretion to order a party to submit to bodily examination, but cautioning that this includes the discretion to refuse such a request where “the necessities of the case are not such as to call for it”, or *495 where the party’s “sense of delicacy . . . may be offended”, or where the examination is “cumulative” or is otherwise unnecessary). Our Supreme Court eventually codified this procedure by court rule.
The modern discovery practice has its origins with GCR 1963, 311.1, which was modeled on Fed R Civ P 35. See 2 Honigman & Hawkins, Mich Court Rules Annotated (2d ed), p 207, comment 3 (noting that Rule 311 was “written in the language” of Fed R Civ P 35). Although the Supreme Court expanded the availability of physical and mental examinations as a discovery tool with the adoption of GCR 1963, 311.1, see 2 Honigman, p 207, it also provided limitations designed to protect litigants from abusive discovery practices. Specifically, GCR 1963, 311.1 provided that a party could only be compelled to submit to an examination by order and then only if the party’s physical or mental condition was “in controversy” and the moving party showed “good cause” for the examination. The rule also clarified that the trial court had the discretion to impose reasonable restrictions on the conduct of the examination. Id. By adopting this rule, our Supreme Court entrusted trial courts with the discretion—and the duty—to carefully balance a party’s right to be free from abusive or excessive invasions of privacy with the opposing party’s right to seek the truth through reasonable discovery. And these limitations on the unfettered use of physical and mental examinations remain materially unchanged in the current rule. See MCR 2.311(A).
Under MCR 2.311(A), a trial court may order—but is not required to order—a party “to submit to a physical or mental or blood examination.” However, the trial court’s authority to order a party to submit to an examination is not unlimited. The trial court may only make such an order when the party’s “mental or *496 physical condition ... is in controversy.” MCR 2.311(A). Additionally, the court may not sua sponte order a party to submit to an examination; rather, the court’s order “may be entered only on motion” after the moving party demonstrates “good cause” for the request. Id. Thus, a trial court only has the discretion to order a party to submit to a physical or mental examination if the party’s physical or mental condition is in controversy and the opposing party requests such an order by motion and after showing good cause for the examination. Even if these criteria are met, however, MCR 2.311(A) still provides the trial court with wide discretion to deny or reasonably limit the request. Therefore, it is beyond reasonable dispute that litigants do not have a “right” to conduct a physical or mental examination of the opposing party however often they might like and under whatever conditions they might like.[1]
Here, although the basis for the trial court’s decision is not entirely clear, it appears that the trial court determined that defendants did not establish good cause. Therefore, I shall first address whether defendants established good cause sufficient to trigger the trial court’s discretion to order Burris to submit to further examination. Because Michigan’s former and current court rule was patterned after Fed R Civ P 35, Michigan courts have turned to federal authorities for guidance.[2] Specifically, Michigan courts have relied on Schlagenhauf v Holder, 379 US 104; 85 S Ct 234; 13 L *497 Ed 2d 152 (1964) in determining the proper construction of both GCR 1963, 311.1 and its successor, MCR 2.311(A). See LeGendre v Monroe Co, 234 Mich App 708, 723-726; 600 NW2d 78 (1999); Brewster v Martin Marietta Aluminum Sales, Inc, 107 Mich App 639, 642-645; 309 NW2d 687 (1981).
In Schlagenhauf, the Court noted that although trial courts have the inherent authority to limit discovery so as to prevent bad faith use or undue annoyance, embarrassment, or oppression,[3] Rule 35 contained an explicit limitation on the use of physical and mental exams: the matter to be discovered must be in controversy and the movant must affirmatively demonstrate good cause. Schlagenhauf, 379 US at 117. The “good cause” requirement, the Court explained, was not a mere formality, but rather an express limitation on the use of the rule. Id. at 118. As such, a party could not establish good cause by asserting that the party’s physical or mental condition is relevant to the matter in controversy; the moving party must instead affirmatively show good cause for the particular examination that he or she desires. Id.
In examining what will constitute good cause, the Court in Schlagenhauf stated that there are “situations where the pleadings alone are sufficient to” establish good cause, such as where a plaintiff in a negligence action asserts a mental or physical injury. Id. at 119. However, it did not frame that statement as an absolute rule—that is, it did not provide that a trial court must, as a matter of course, determine that a defendant has good cause for conducting a physical or mental examination in a negligence action where the plaintiff has alleged a physical or mental injury. Rather, the Court explained that the motion must be evaluated in light of *498 the unique facts underlying the specific request: “Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.” Id. at 118. And it is the movant’s burden to “produce sufficient information, by whatever means, so that the [] judge can fulfill his function mandated by the Rule.” Id. at 119.
In this case, rather than rely on the extensive medical records already available to defendants, defendants’ lawyer scheduled Burris for so-called “independent medical examinations” with three physicians: one specializing in physical medicine and rehabilitation, one specializing in psychiatry, and one specializing in neu-ropsychology. Defendants’ lawyer did this without first obtaining a stipulation from Burris’ lawyer and without moving for permission from the trial court.
On December 20, 2010, Burris’ lawyer rejected defendants’ lawyer’s attempt to unilaterally schedule these examinations without any restrictions:
You have requested three defense medical evaluations to evaluate my client. As previously indicated, my position is that you would be entitled to your own, but not also the PIP IME completed by my client within the same specialty. I will not get into the specifics ....
Additionally, you have requested an evaluation with Dr. Benedek and I have requested that the same be videotaped. I discussed these reasons with Mr. Davis.
After Burris’ lawyer’s refusal, defendants filed a motion to compel the examinations under MCR 2.311(A). In response, Burris’ lawyer pointed out that defendants’ own no-fault carrier had already submitted Burris to five separate examinations, including one by a physical medicine and rehabilitation physician, and one by a neuropsychologist, and that their *499 reports were all provided to defendants’ lawyer. In addition, defendants already had Burris’ medical records. Burris’ lawyer asserted that defendants’ requests were excessive and duplicative in light of the examination records and medical records already available to defendants. Burris further claimed that she was not treating with a psychiatrist, and that Dr. Benedek, who was defendants’ proposed psychiatrist, was a well-known defense expert who allegedly had written reports and testified contrary to events that took place in past examinations, which would warrant some protective measure. Burris further argued that defendants failed to demonstrate good cause to “double up on defense experts.” Notwithstanding these objections, Burris indicated that she had no objection to the additional examinations if defendants were not allowed the benefit of the additional no-fault experts’ testimony and if the trial court allowed her to videotape the evaluation with Dr. Benedek.
At the hearing, defendants’ lawyer responded to Burris’ objections by noting that Burris had a list “of some 25 doctors” that might be called to testify. Defendants’ lawyer also asserted that defendants “have the right to pick our experts.” Defendants’ lawyer noted too that the examinations from the no-fault case were older.
In denying defendants’ motion, the trial court explained that defendants had already received adequate discovery on Burris’ medical condition and did not need to subject Burris to further examinations:
It appears that at least five independent medical examinations have already been conducted plus the other medical [records] involved in this case. It seems to me that that should be sufficient for all of the parties on the Defense *500 side. [Thus], any additional examinations appear to be overburdensome and really puts the Plaintiff [at] an unfair disadvantage.
I conclude that the trial court properly denied the motion because defendants failed to show good cause for the requested examinations. The record shows that they already had the reports from examinations conducted by five doctors, which included a physical medicine and rehabilitation physician and a neuropsychologist. They also had Burris’ own medical records. Aside from baldly asserting a supposed right to pick their own experts and an oblique reference to the time elapsed since the last examinations, defendants failed to state why they needed these specific examinations by these specific experts. Schlagenhauf, 379 US at 118-119. Defendants also refused to acquiesce to any of Burris’ proposed compromises. The trial court apparently took all these matters into consideration and, on that basis, determined that defendants had not met their burden to establish good cause.
Even if defendants minimally established good cause, the trial court still had the authority to deny the motion or grant it on a limited basis depending on the facts unique to the case. See MCR 2.311(A). Here, the trial court determined that defendants had adequate discovery on the disputed evidence and the ability to call the experts who had conducted the original examinations. Moreover, following the trial court’s original order denying defendants’ request for the examinations, the trial court entered an order compelling Burris to undergo an independent neuropsychological examination because the neuropsychologist from the original no-fault lawsuit had died. Consequently, the record shows that the trial court took reasonable steps to balance *501 defendants’ right to discovery and Burris’ right to be free from burdensome and invasive examinations.
On this record, I cannot conclude that the trial court’s decision to deny the motion fell outside the range of reasonable and principled outcomes. Smith v Khouri, 481 Mich 519, 526; 751 NW2d 472 (2008).
For these reasons, I would affirm.

 The record in this case illustrates what I perceive to be a long-abused practice that is clearly prohibited under MCR 2.311(A): the scheduling of medical examinations without first moving for permission and demonstrating good cause.

 Michigan courts may rely on federal authorities that interpret analogous provisions of the federal rules. Barnard Mfg Co, Inc v Gates Performance Engineering, Inc, 285 Mich App 362, 378 n 7; 775 NW2d 618 (2009).

 Michigan courts have a similar authority. See MCR 2.302(C).