Per Curiam.
 

 In this sex discrimination and retaliation case brought under the Civil Rights Act (cra), MCL 37.2101
 
 et seq.;
 
 MSA 3.548(101)
 
 el seq.,
 
 plaintiff appeals as of right from the circuit court’s orders severing plaintiff’s case from that of a coplaintiff; precluding plaintiff from presenting evidence relating to her psychological, emotional, or physical condition in support of her claims for noneconomic damages; and granting dismissal in favor of defendants. We vacate the circuit court’s order of dismissal and affirm its order severing the cases. Regarding the order precluding plaintiff from presenting evidence relating to her psychological, emotional, or physical condition, we disagree with, but must follow,
 
 Hyde v Univ of Michigan Bd of Regents,
 
 226 Mich App 511; 575
 
 *711
 
 NW2d 36 (1997), under Administrative Order No. 1996-4, and therefore affirm. Were it not for
 
 Hyde,
 
 we would reverse the portion of the order precluding testimony regarding plaintiffs ordinary psychological or emotional distress and remand for further proceedings consistent with this opinion.
 

 Plaintiff and Nancy M. Feick, initially a coplaintiff in this case,
 
 [1]
 
 were attorneys in the Monroe County Prosecutor’s Office. Feick was hired by the prosecutor’s office in 1985 and plaintiff was hired in 1991. In January of 1991, Feick was promoted to chief assistant prosecutor by then-prosecutor William Frey. Defendant Edward F. Swinkey was elected Prosecuting Attorney of Monroe County in the 1992 election. Plaintiff had run against him. Plaintiff and Feick were the only two women working in the Monroe County Prosecutor’s Office when Swinkey took office.
 

 Plaintiffs and Feick’s employment ended on December 31, 1992, when Swinkey did not reappoint them. Two male assistant prosecutors were also not reappointed by Swinkey.
 

 Plaintiff and Feick filed complaints with the Equal Employment Opportunity Commission (eeoc) and the Michigan Department of Civil Rights (mdcr), claiming that Swinkey fired them because of their gender. Subsequently, plaintiff applied for an assistant prosecutor position and was granted an interview. During the interview, Swinkey questioned plaintiff about her discrimination charges and warned her that what she had said would be held against her. Swinkey hired a
 
 *712
 
 female applicant who had not yet passed the bar examination to fill the position. During the summer of 1993, plaintiff was offered the position of Special Prosecutor for Domestic Affairs for Monroe County, but only when she agreed to withdraw her discrimination charges. Plaintiff left that position at the end of 1993. In December of 1993, plaintiff applied for a position as a Monroe County Juvenile Court Referee, but a male was hired for the job.
 

 In the scant excerpts of plaintiffs deposition before us, plaintiff testified that she left the position of special prosecutor for domestic affairs after only six months because of a difference of opinion with a supervisor, John Pace, regarding her being on disability. Plaintiff testified that her doctor had told her that she could go back to work part-time following foot surgery. She testified that she was teaching at a community college at the time and had done so for the preceding four years. Plaintiff testified that she approached Pace regarding working part-time until the end of the college semester, which was in six weeks, and said that she would then return to work full-time. Plaintiff testified that Pace told her that if she could not work full-time as a prosecutor, she could not teach at the college. Plaintiff testified that classes at the college were starting that day, that she could not leave the college without an instructor, and that she therefore left the prosecutor’s position. Plaintiff believed she had been treated discriminatorily by her supervisor because a male co-worker had been allowed to take a great deal of disability time off and hold an outside job without reprisal. Plaintiff received disability payments after her foot surgery, but refused
 
 *713
 
 to divulge the amount at deposition, asserting the physician-patient privilege.
 

 Plaintiff and Feick filed their complaint on July 14, 1995. They alleged that defendants’ actions regarding their employment violated the cra, as well as their right to equal protection guaranteed by Const 1963, art 1, § 2. The complaint alleged that defendants fired and refused to rehire them because they were female, because of Feick’s age, and in retaliation for their civil rights complaints to the EEOC and the MDCR. It further alleged that they “each suffered injuries, all of which are continuing in nature,” including embarrassment, mortification, humiliation, and outrage.
 
 [2]
 

 Before discovery began, Swinkey filed a motion to sever plaintiff’s and Feick’s claims, pursuant to MCR 2.505(B), 2.206, and 2.207, with which Monroe County concurred. The circuit court granted defendants’ motion, severing the cases for discovery
 
 [3]
 
 as well as trial.
 

 After both defendants filed motions to compel plaintiff and Feick to answer interrogatories, the parties stipulated that plaintiff and Feick would produce the interrogatory answers within ten days. Plaintiff and Feick served answers to Swinkey’s interrogatories within the stipulated time, but both responded to the following interrogatories with the answer “Plaintiff objects to this interrogatory for the reason that it calls for privileged information.”
 

 
 *714
 
 14. Have you treated with or consulted with any psychologist, psychiatrist, social worker, clergyman or other professional regarding the mental distress alleged in your Complaint?
 

 15. If you [sic] response to the proceeding [sic] interrogatory was in the affirmative, please state:
 

 (a) The name and address of each and every such person visited;
 

 (b) The dates that you consulted with, or treated with each and every such professional;
 

 (c) Please complete, sign and return the enclosed authorization from [sic] for each and every such person.
 

 16. List chronologically with dates, the names and addresses of all doctors, psychiatrists, psychologist or social workers whom you have seen or with whom you have consulted from January 1980 to present; the nature of the ailment or other reason for which each doctor was consulted and the treatment on each occasion.
 

 17. Give the names and address of all hospitals, including psychiatric, where you have been either and [sic] in-patient or an out-patient during yo [sic] entire life and as to each hospital, give:
 

 (a) Date of admission and discharge;
 

 (b) Nature of the ailment or illness for which you were hospitalized;
 

 (c) Name and addresses of any attending physicians.
 

 The interrogatories also asked the foüowing question regarding physical injury:
 

 18. Do you allege any physical injury as a result of the incidents alleged within your Complaint? If so, set forth the exact nature of all present physical complaints which you allege are attributable to the incidents complained of.
 

 ANSWER: No.
 

 19. If you have been hospitalized or treated by a doctor or, [sic] medical professional by reason of this incident, list the names and addresses of all such hospitals, doctors clin
 
 *715
 
 ics or other medical institutions with which you were a patient as well as the date of confinement in any hospital.
 

 ANSWER: Not applicable.
 

 20. Have you discussed this case with any potential expert witnesses or do you intend to expect to call an expert to testify on your behalf as the time of trial?. . . .
 

 ANSWER: No.
 

 Swinkey filed a motion to preclude plaintiffs
 
 [4]
 
 from presenting evidence of their physical and mental damages at trial pursuant to MCR 2.314(B)(2) so that he would not be “sandbagged” with unknown and unforeseen information. Monroe County concurred in Swinkey’s motion.
 

 At the beginning of the hearing regarding Swinkey’s motion, the circuit court requested that separate complaints be filed because it had not received them after entering its order to sever.
 
 [5]
 

 [6]
 
 Plaintiff’s counsel asserted that plaintiff had not put her physical and mental conditions in controversy simply by alleging embarrassment, mortification, humiliation, and outrage, and further stated that plaintiff did not plan to present expert testimony at trial about any physical or mental injuries suffered. The circuit court granted defendants’ motion, stating:
 

 It appears from the court rule that when you invoke the privilege that the parties may not thereafter present or introduce any physical, documentary or testimonial evidence relating to the medical history, mental or physical condition of the Plaintiff who is complaining.
 

 
 *716
 
 And I can see a real pitfall to the Defendant if such a motion were not filed for the simple reason that if the testimony comes in at the time of trial that somebody was crying uncontrollably or demonstrating mental or physical stress and trying to relate it to the complaint against the Defendant without the ability to discover these facts there might be some other underlying cause for that emotional distress. So, therefore, I would grant the motion.
 
 [6]
 

 Swinkey subsequently filed a motion to compel production of plaintiff’s disability insurance records pursuant to MCR 2.313(A)(2)(a). Swinkey had requested medical records related to plaintiff’s disability claim, but plaintiff refused to release them, asserting the physician-patient privilege. Swinkey alleged that plaintiff left the special prosecutor’s job because of her disability, not because of defendants’ threats that she would receive and keep the job only if she dropped her discrimination complaints or because she was forced to choose between employment by Monroe County or by the community college. Swinkey claimed that he needed the disability records to ascertain plaintiff’s ability to hold the special prosecutor’s job or find similar employment and so meet her obligation to mitigate damages. Swinkey also argued that any disability payments plaintiff received after resigning her position as special prosecutor for domestic affairs were a collateral source that defendants should be allowed to deduct from any wage-loss
 
 *717
 
 claim under MCL 600.6303(1); MSA 27A.6303(1), and that this information should be contained in the disability insurance records. Swinkey further argued that defendants believed plaintiff was on disability for a different reason before returning to work for the prosecutor’s office in the summer of 1993. He argued that it appeared that plaintiff made the disability claim before leaving the prosecutor’s office on January 1, 1993.
 

 At the hearing regarding Swinkey’s motion, Swinkey’s counsel argued that although plaintiff was now willing to answer questions regarding when she received disability and the records of payments received, and that the parties would stipulate an order requiring that she answer those questions and produce records of payment, plaintiff still refused to release the medical records contained in the disability records on the basis of privilege. Counsel asserted that the records were relevant to plaintiff’s ability and efforts to mitigate her damages incurred after leaving the friend of the court position in 1993.
 
 [7]
 

 
 *718
 
 Plaintiff’s counsel argued that plaintiff’s medical condition was irrelevant, in that it was not necessary to know the specific medical condition to determine whether plaintiff was available for work because, if she received disability benefits, she was unavailable for work and could not obtain back-pay for those periods. Counsel argued that it was the fact of disability that was relevant, that plaintiff had agreed to provide that information, and that the court had already stricken noneconomic damages and plaintiff still insisted on her right of privacy. Counsel for Monroe County then suggested a compromise, i.e., that the court view the medical records in camera. Plaintiff’s counsel and Swinkey’s counsel agreed, noting:
 

 Ms. Amtsbeuchler
 
 [defense counsel]: That would be fine. I just want to make sure we are clear, I think there is more than one disability application. I think there may be three: one before she can [sic, came] to the prosecutor’s office: one while she was at the prosecutor’s office, after the time she found out she wasn’t going to be reappointed: and three, at the special prosecutor’s job.
 

 We think they are all relevant, whether it was foot surgery or some other condition. I guess the condition may or may not be important depending on what it is. We have no way of knowing until, obviously, somebody takes a look at them. And if the court is willing to do that, that’s fine.
 

 
 *719
 
 Plaintiffs counsel responded:
 

 If the Court is inclined to provide copies of the medical records to the Defendants, I think in fairness to the Plaintiff the Plaintiff should have the opportunity to dismiss the lawsuit rather than waiving that privilege.
 

 The Court:
 
 At this point I will not read the medical records in camera because I will not investigate this case and do the work of the attorneys. I will grant the motion that she either produce those [disability records including the medical records] or the case be dismissed.
 

 Plaintiff did not produce the records, and the court dismissed her case. This appeal ensued.
 

 i
 

 First, we disagree with plaintiffs argument that the circuit court erred in granting defendants’ motion to sever her claims from Feick’s.
 

 MCR 2.505(B) allows a circuit court to sever trials to avoid prejudice or for convenience, expedition, or economy.
 
 Hodgins v Times Herald Co,
 
 169 Mich App 245, 261; 425 NW2d 522 (1988). Although we review for abuse of discretion a circuit court’s grant of a motion to sever, the decision to sever trials should be ordered only upon the most persuasive showing that the convenience of all parties and the court requires it. Id.;
 
 Jemaa v MacGregor Athletic Products,
 
 151 Mich App 273, 278; 390 NW2d 180 (1986).
 

 Plaintiff’s claims arose from a different set of occurrences than Feick’s, except, possibly, Swinkey’s not reappointing them on December 31, 1992. See
 
 Jemaa, id.
 
 at 279. On that date, plaintiff was an assistant prosecutor and had worked for the prosecutor’s office for about one year, while Feick was chief assistant prosecutor and had worked for the prosecutor’s
 
 *720
 
 office for over seven years. Feick had more responsibility and more seniority than plaintiff. After not being reappointed, plaintiff and Feick applied for different positions within the prosecutor’s office. Feick reapplied for the chief assistant prosecutor position when it opened again but was not granted an interview. Feick also applied for other high-level positions: department head for the Friend of the Court and chief referee for juvenile matters in the Monroe County Probate Court. Plaintiff, on the other hand, applied for the lower level positions of assistant prosecutor and juvenile court referee. Unlike Feick, plaintiff was offered and accepted a position, special prosecutor for domestic affairs. Unlike Feick, plaintiff alleged that she was confronted during two interviews by representatives of Monroe County with the fact that she had filed discrimination charges, and was offered the special prosecutor position only if she dropped the charges. Further, Feick’s case raised issues of political activity and affiliation not present in plaintiff’s case. See n 1,
 
 supra.
 

 We conclude that different proofs would, to a great extent, be required to establish each case.
 
 Jemaa, supra
 
 at 279. Plaintiff and Feick had different backgrounds, experience levels, and longevity with the prosecutor’s office, and each applied for different positions after not being reappointed by Swinkey. Further, Feick alleged age discrimination, while plaintiff did not. Moreover, holding separate trials would not foreclose the possibility of presenting evidence at plaintiff’s trial of defendant’s alleged discriminatory treatment of Feick, if appropriate. See
 
 Jenkins v Southeastern Michigan Chapter, American Red Cross,
 
 141 Mich App 785, 794-795; 369 NW2d 223
 
 *721
 
 (1985). We conclude that under these circumstances the potential for jury confusion and prejudice against defendants was great and that the circuit court thus did not abuse its discretion when it granted defendants’ motion to sever.
 

 n
 

 Plaintiff next argues that the circuit court erred in precluding her from presenting evidence of mental distress at trial because she did not put her mental condition in controversy within the meaning of MCR 2.314(A) by alleging “garden-variety” mental distress damages. Plaintiff argues that ordinary mental distress damages should be fully recoverable without requiring that a plaintiff submit to invasive inquiries into her most sensitive private affairs, and that this is especially true in civil rights actions where plaintiffs are vindicating rights accorded special legal protection.
 

 A
 

 We review rulings regarding exclusion of evidence for abuse of discretion.
 
 McDonald v Stroh Brewery Co,
 
 191 Mich App 601, 605; 478 NW2d 699 (1991). However, the circuit court’s ruling was based on interpretation of MCR 2.314, which is a question of law.
 
 Smeets v Genesee Co Clerk,
 
 193 Mich App 628, 633; 484 NW2d 770 (1992);
 
 Michigan Basic Property Ins Ass’n v Hackert Furniture Distributing Co, Inc,
 
 194 Mich App 230, 234; 486 NW2d 68 (1992).
 

 Michigan law is strongly committed to open and far-reaching discovery and generally provides for dis
 
 *722
 
 covery of any relevant, nonprivileged matter.
 
 Merit Mfg & Die, Inc v ITT Higbie Mfg Co,
 
 204 Mich App 16, 21; 514 NW2d 192 (1994); see also MCR 2.302(B) (providing that “[p]arties may obtain discovery regarding any matter, not privileged”).
 

 MCR 2.314 provides:
 

 (A) Scope of Rule.
 

 (1)
 
 When a mental or physical condition of a party is in controversy,
 
 medical information about the condition is subject to discovery under these rules to the extent that
 

 (a) the information is otherwise discoverable under MCR 2.302(B), and
 

 (b) the party does not assert that the information is subject to a valid privilege.
 

 (B) Privilege; Assertion; Waiver; Effects.
 

 (1) A party who has a valid privilege may assert the privilege and prevent discovery of medical information relating to his or her mental or physical condition. . . .
 

 (2) Unless the court orders otherwise, if a party asserts that the medical information is subject to a privilege and the assertion has the effect of preventing discovery of medical information otherwise discoverable under MCR 2.302(B), the party may not thereafter present or introduce any physical, documentary, or testimonial evidence relating to the party’s medical history or mental or physical condition. [Emphasis added.]
 

 The “in controversy” requirement of MCR 2.314 serves to limit the scope of discovery normally permitted by rule 2.302(B):
 

 
 *723
 
 a.
 
 In controversy.
 
 The rale requires that the physical or mental condition of a party
 
 actually be in controversy before medical information concerning that condition is subject to discovery.
 
 In this respect, the subrale actually serves to
 
 limit
 
 the scope of discovery normally permitted by rule 2.302(B). . . .
 
 However loosely the courts interpret the “controversy” requirement, it will of necessity be more stringent than the liberal “relevant to the subject matter involved in the pending action” standard normally utilized by rule 2.302(B).
 

 The “controversy” requirement utilized by rule 2.314(A) also appears in rule 2.311, Physical or Mental Examinations of Persons.
 
 The requirement is discussed in further detail under that rule, and the Authors’ Comment thereto should be consulted. [2 Martin, Dean & Webster, Michigan Court Rules Practice, Authors’ Comment, p 382 (emphasis added).]
 

 MCR 2.314 has no federal counterpart. MCR 2.311 is based on FR Civ P 35 and GCR 1963, 311. See n 11. The Authors’ Comment to MCR 2.311 states in pertinent part:
 

 ii. In controversy in the action. For an order requiring the physical or mental examination of a party to enter, that physical or mental condition must be in controversy in the action. While a plaintiff suing for personal injuries clearly puts his or her physical or mental condition into controversy, the area is not quite so clear when the physical or mental condition of a party is raised by another party to the action. As the facts and circumstances of actions vary tremendously, no clear standard may be applied to every case. One standard is, however, clear. The requirement that the physical or mental condition of a party be in actual controversy in the action
 
 is an express limitation on the use of the rule, and not a mere formality to be routinely reviewed by the trial court.
 
 A definitive discussion of this requirement, and the requirement that the moving party show good
 
 *724
 
 cause, is contained in Schlagenhauf v Holder, 379 US 104, 85 S Ct 234, 13 L Ed 2d 152 (1964). [Michigan Court Rules Practice,
 
 supra
 
 at 338 (emphasis added).]
 

 As noted, the seminal case interpreting the scope of FR Civ P 35 is
 
 Schlagenhauf, supra.
 

 [8]
 

 In
 
 Schlagenhauf,
 
 the Court held that the “in controversy” and “good cause” requirements of FR Civ P 35
 

 are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination....
 

 Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule’s requirements of “in controversy” and “good cause,” which requirements, as the Court of Appeals in this case itself recognized, are necessarily related.
 
 [Schlagenhauf, supra
 
 at 118-119.
 
 [9]
 

 
 *725
 
 B
 

 The issue whether a plaintiff’s allegations of ordinary mental distress in an employment discrimination case place his mental condition in controversy was addressed by a panel of this Court during the pendency of this appeal in
 
 Hyde, supra.
 

 [10]
 

 The
 
 Hyde
 
 panel held that by seeking recovery for “anything beyond economic damages,” a plaintiff in an employment discrimination case places in issue his mental condition,
 
 *726
 
 and it is consequently open to discovery.
 
 Hyde, supra,
 
 at 523-524.
 

 We disagree with this result because it contravenes
 
 Schlagenhauf’s
 
 edict that the “in controversy” requirement of FR Civ P 35, which is the same as that of MCR 2.314, is not met by mere conclusory allegations of the pleadings or by mere relevance to the case, and because it is contrary to the results reached by the majority of courts that have addressed the issue.
 

 c
 

 Most federal courts that have considered the “in controversy” requirement have done so in the context of FR Civ P 35
 
 [11]
 
 and have held that a plaintiff in an
 
 *727
 
 employment discrimination case does not place the plaintiffs mental condition “in controversy” merely by alleging emotional distress or “garden-variety” damages arising from the discrimination claim.
 
 [12]
 
 As discussed above, the “in controversy” requirement of FR Civ P 35(a) and MCR 2.311 is the same as the “in controversy” requirement of MCR 2.314. Therefore, cases interpreting the “in controversy” requirement of FR Civ P 35(a), although not binding, are instructive.
 
 Brewster v Martin Marietta Aluminum Sales, Inc,
 
 107 Mich App 639, 643; 309 NW2d 687 (1981).
 

 In
 
 Smith v J I Case Corp,
 
 163 FRD 229 (ED Pa, 1995), a products liability action, the defendant sought to compel the plaintiff to submit to a psychological examination and to produce psychological records from both before and after the plaintiff was injured by a backhoe manufactured by the defendant. The defendant argued that, even though the plaintiff had withdrawn a separate tort claim for emotional distress suffered as a result of the accident, his mental condition was still at issue because he claimed to have suffered compensable damages as a result of embarrassment and myofascial pain syndrome, and because the physical injuries had psycho
 
 *728
 
 logical components. The court denied both the defendant’s motion to compel a psychiatric examination and the defendant’s request for medical records, with the exception of records kept by the behavioral psychologists whose bills the plaintiff claimed were compensable damages. The court explained:
 

 Two recently published [employment discrimination] cases conducted a thorough review of cases in which psychiatric examinations under Fed R Civ Proc 35 were at issue, and they concluded that although no “hard and fast rule” has been articulated, courts seem to allow them when 1) there is a separate tort claim for emotional distress, 2) the plaintiff alleges that he suffers from a severe ongoing mental injury or a psychiatric disorder, 3) the plaintiff will offer expert testimony to support the claim, or 4) the plaintiff concedes his mental condition is in controversy.
 
 See Turner v Imperial Stores,
 
 161 FRD 89, 95-96 (SD Cal, 1995);
 
 see also Bridges v Eastman Kodak Co,
 
 850 F Supp 216 (SD NY, 1994).
 

 Thus, a claim of emotional distress, without more, is insufficient to put the plaintiff’s mental condition “in controversy.”
 
 Turner,
 
 161 FRD at 97;
 
 Cody v Marriott Corp,
 
 103 FRD 421, 422 (D Mass, 1984). The “in controversy” and “good cause” requirements of Fed R Civ Proc 35 “ ‘make it very apparent that sweeping examinations of a party who has not affirmatively put into issue his own mental. . . condition are not to be ordered merely because the person’ has made a claim of emotional distress.”
 
 Cody,
 
 103 FRD at 422,
 
 quoting in part Schlagenhauf [v Holder,
 
 379 US 104, 121-22; 85 S Ct 234; 13 L Ed 2d 152 (1964)].
 
 [Smith, supra
 
 at 230-231.]
 

 The court further noted that the plaintiff did not allege emotional distress in his amended complaint, that his claim of mental damages was limited to “embarrassment” and was not pleaded as a separate tort claim, that there was no evidence that the plain
 
 *729
 
 tiff would employ an expert to testify about his embarrassment, and that there was no allegation that the embarrassment was particularly severe or that it rose to the level of a psychiatric disorder.
 
 Id.
 
 at 231. Accordingly, the court concluded that the plaintiff did not place his mental condition in controversy by alleging embarrassment, and good cause was not shown such that a psychiatric examination was in order.
 
 [13]
 

 The weight of authority on this issue is in accord and supports plaintiff’s position. See
 
 Lahr v Fulbright & Jaworski, LLP,
 
 164 FRD 204, 210-211 (ND Tex, 1996) (holding that the plaintiff in a sex discrimination case affirmatively placed her mental condition in controversy by claiming intentional infliction of emotional distress, but not by claiming compensatory damages for “emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life” associated with working in a hostile environment);
 
 O’Quinn v New York Univ Medical Center,
 
 163 FRD 226, 228 (SD NY, 1995) (holding that because the plaintiff in a sex discrimination case was not pursuing claims for
 
 ongoing severe
 
 emotional harm and had not alleged an independent tort claim for emotional distress, she did not place her mental condition in controversy);
 
 Turner v Imperial Stores,
 
 161 FRD 89, 97 (SD Cal, 1995) (noting that in order to establish that the other party’s mental condition is “in contro
 
 *730
 
 versy,” “the moving party must show more than that the party in question has claimed emotional distress”);
 
 [14]
 

 Bridges v Eastman Kodak Co,
 
 850 F Supp 216, 222 (SD NY, 1994) (holding that the plaintiffs, who alleged sexual harassment in violation of title VII and state law, did not place their mental condition in controversy by alleging emotional suffering and mental anguish as a result of abusive working condi
 
 *731
 
 tions, noting that the plaintiffs had not alleged a separate tort claim for emotional distress, or
 
 ongoing severe
 
 mental injury);
 
 Curtis v Express, Inc,
 
 868 F Supp 467, 469 (ND NY, 1994) (holding that the plaintiff in a race discrimination case did not place her mental condition in controversy where she did not allege a separate tort claim for emotional distress, and only claimed damages for
 
 past
 
 mental suffering);
 
 Robinson v Jacksonville Shipyards, Inc,
 
 118 FRD 525, 531 (MD Fla, 1988) (holding that the plaintiff in a sexual harassment case did not place her mental condition in controversy by alleging that her psychological well-being was seriously affected by defendants’ workplace sexual harassment);
 
 [15]
 
 and
 
 Cody v
 
 
 *732
 

 Marriott Corp,
 
 103 FRD 421, 422 (D Mass, 1984) (holding that the plaintiff in an employment discrimination case did not place her mental condition in controversy by asserting a claim for physical and emotional distress, and distinguishing cases in which the plaintiffs had alleged specific “mental and psychiatric injuries,” had alleged total and permanent disability and admitted that their mental condition was in controversy, and had placed their mental health into question by making mental injuries the central factual dispute in reference to damages). See also
 
 Doyle v Superior Court,
 
 50 Cal App 4th 1878; 58 Cal Rptr 2d 476 (1996) (allegations of
 
 past
 
 mental distress are insufficient to place the plaintiffs mental condition in controversy); and
 
 Vinson v Superior Court,
 
 43 Cal 3d 833, 840; 239 Cal Rptr 292; 740 P2d 404 (1987) (while noting that a simple sexual harassment claim asking compensation for having to endure an oppressive work environment would not normally create a controversy regarding the plaintiffs mental state, and that to hold otherwise would mean that every person who brings such a suit implicitly asserts he is mentally unstable, the court granted the defendants’ request for a mental examination of the plaintiff limited in scope, because the plaintiff alleged damages
 
 of a continuing nature,
 
 including severe emotional distress).
 

 D
 

 We have found very few cases holding to the contrary, and agree with the conclusion of other courts
 
 *733
 
 that have considered these cases that they are either distinguishable or were decided without analysis and are thus not persuasive.
 

 In
 
 Zabkowicz v West Bend Co,
 
 585 F Supp 635 (ED Wis, 1984), the plaintiffs, a married couple, alleged they suffered “extreme emotional distress” as a result of the sexual harassment suffered by one of the plaintiffs at her place of employment. The defendant moved for an order permitting its psychiatrist to examine the plaintiffs without the presence of a third party or a recording device pursuant to FR Civ P 37. The court denied the defendant’s motion, noting:
 

 Because the plaintiffs allege emotional distress, an examination by a nominee of the defendants is appropriate. The plaintiffs insist, however, that a third party or a recording device is necessary to assure that the defendants’ expert does not probe beyond permissible limits. The plaintiffs fear that an unsupervised examination could easily be transformed into a de facto deposition.
 

 The defendants argue with some force that the presence of a third party or a recording device may create inhibitions detrimental to a psychiatric interview. . . .
 

 The defendants’ expert is being engaged to advance the interests of the defendants; clearly, the doctor cannot be considered a neutral in this case. There are numerous advantages, unrelated to the emotional damage issue, which the defendants might derive from an unsupervised examination. In sum, I do not believe that the role of the defendants’ expert in the truth-seeking process is sufficiently impartial to justify the license sought by the defendants. Accordingly, the plaintiffs, at their option, are entitled to have a third party (including counsel) or a recording device at the examination.
 
 [Zabkowicz, supra
 
 at 636.]
 

 The issue whether the plaintiffs placed their mental conditions in controversy was not squarely before the court, and it is not clear from the opinion whether the
 
 *734
 
 plaintiffs opposed the mental examination or merely opposed the examination taking place absent a third party or recording device. Additionally, because the plaintiffs in
 
 Zabkowicz
 
 alleged “extreme emotional distress,”
 
 Zabkowicz
 
 is further distinguishable from the instant case.
 

 The only case cited by Monroe County as adverse to the majority position reviewed above is
 
 Lowe v Philadelphia Newspapers,
 
 101 FRD 296 (ED Pa, 1983). In
 
 Lowe,
 
 a race discrimination case, the plaintiff asserted that the actions taken by her employer caused her
 
 severe
 
 emotional and physical harm and distress, and sought both compensatory and punitive damages. The parties disagreed regarding the scope of permissible discovery of the plaintiffs medical and personal history; the plaintiff argued that any inquiry into her past medical or mental problems should be precluded unless it directly related to her job performance and, at the plaintiffs psychiatrist’s deposition, the plaintiff’s counsel precluded inquiry into any statements or medical or personal history of the plaintiff unless directly job related. The court noted:
 

 The difficulty with plaintiffs contentions is that she is the person asserting that she has suffered
 
 severe physical and emotional distress and harm, and seeks to prove this through her own testimony and, that of physicians and psychiatrists
 
 .... Defense counsel, therefore, has a clear right to make a searching inquiry into plaintiff’s past for the purpose, among others, of showing that her emotional and physical distress was caused, at least in part, if not in whole, by events and circumstances that were in no way “job related.”
 
 [Id.
 
 at 298 (emphasis added).]
 

 The problematic portion of the
 
 Lowe
 
 opinion followed the above discussion:
 

 
 *735
 
 So long as plaintiff seeks either or both compensatory and punitive damages by reason of physical, mental or emotional harm or distress, defendant is entitled to inquire during discovery of witnesses, including physicians and psychiatrists as to plaintiff’s past history whether or not directly related to her job or job performance.
 
 [Id.
 
 at 298-299.]
 

 This troublesome statement notwithstanding, some courts have characterized
 
 Lowe
 
 as holding that a defendant is entitled to a psychiatric examination of a plaintiff who placed her mental state into question by seeking compensatory and
 
 punitive damages
 
 for
 
 severe
 
 physical and emotional distress. See
 
 Bridges, supra
 
 at 222;
 
 Robinson, supra
 
 at 528-529. In any event,
 
 Lowe
 
 is distinguishable factually from the instant case, in which plaintiff did not seek to establish severe physical or emotional distress, did not seek punitive damages, and did not intend to call physicians or mental health workers at trial.
 
 [16]
 

 
 *736
 
 We conclude that the weight of authority interpreting the “in controversy” requirement of FR Civ P 35 supports that plaintiff did not place her mental condition in controversy by alleging mental anguish arising from defendants’ alleged discrimination. Plaintiff did not allege a tort claim separate from her discrimination claim, or a specific psychiatric injury or condition, or a “severe” mental injury, and stated that she did not intend to present expert testimony at trial on the issue of mental damages. Although plaintiff’s complaint did allege that her embarrassment, mortification, humiliation, and outrage were “continuing in nature,” plaintiff should be given an opportunity to amend her complaint to drop the “continuing in nature” allegation, because this issue was not explored below and because plaintiff’s counsel’s arguments on appeal contradict that allegation insofar as plaintiff argues that she alleged merely ordinary
 
 *737
 
 mental distress damages that arose as a result of defendants’ discrimination.
 
 [17]
 

 E
 

 Defendant Swinkey argues that cases interpreting the “in controversy” requirement of FR Civ P 35 are inapplicable because mental examinations are more intrusive than the discovery of medical records defendants sought here. However, defendant cites only a single case in support of this purported distinction,
 
 Price v San Diego Co,
 
 165 FRD 614 (SD Cal, 1996), which is inapposite because the federal rules do not extend the “in controversy” requirement to the discovery of medical records, while MCR 2.314 does.
 
 [18]
 

 
 *741
 
 But for our obligation to follow
 
 Hyde, supra,
 
 we would reverse the circuit court’s order precluding plaintiff from presenting evidence relating to emotional distress she suffered as a result of defendants’ alleged discrimination, follow the cases discussed in section no,
 
 supra,
 
 and remand for further proceedings consistent with this opinion.
 

 m
 

 Plaintiff last argues that the circuit court erred in dismissing her claims on the basis of her refusal to provide disability insurance records that she asserted were protected by the physician-patient privilege, a privilege she argues she did not waive.
 

 We review the circuit court’s determination to dismiss an action or to impose sanctions for failure to permit discovery for abuse of discretion.
 
 Thorne v
 
 
 *742
 

 Bell,
 
 206 Mich App 625, 633; 522 NW2d 711 (1994). An in camera proceeding is the appropriate vehicle to determine whether information requested in discovery proceedings is protected by a statutory privilege.
 
 Porter v Michigan Osteopathic Hosp Ass’n, Inc,
 
 170 Mich App 619, 624; 428 NW2d 719 (1988).
 

 It is apparent from the hearing transcript that plaintiff was willing to submit the records at issue to the trial court for in camera review; defendant agreed with this procedure as well. However, the circuit court refused to review the records in camera. This was an abuse of discretion. Because we are unable on this record to determine whether the records are indeed privileged, remand is necessary for the circuit court to make that determination in camera.
 

 We affirm the circuit court’s determination to sever, and, on the basis of
 
 Hyde,
 
 its determination to preclude plaintiff from presenting evidence relating to her psychological, emotional, or physical condition. We vacate the circuit court’s dismissal of plaintiff’s claims and remand for an in camera determination whether and to what extent the disputed records are privileged, and for entry of appropriate orders, consistent with the court rules, depending on the court’s conclusions. We do not retain jurisdiction.
 

 [1]
 

 Feick’s case was the subject of a separate appeal,
 
 Feick v Monroe Co,
 
 229 Mich App 335; 582 NW2d 207 (1998), in which this Court affirmed the circuit court’s dismissal of Feick’s claims of age and gender discrimination and retaliation under the cra.
 

 [2]
 

 Defendants’ affirmative defenses included that plaintiffs had failed to mitigate damages.
 

 [3]
 

 At the hearing regarding defendants’ motion to sever, plaintiffs counsel requested, with defense counsel’s agreement, that the cases remain joined for discovery.
 

 [4]
 

 Swinkey’s motion also applied to Feick, but that claim is not pertinent to this appeal. Feick did not challenge the circuit court’s determination to preclude evidence relating to emotional or psychological distress in her appeal. See n 1,
 
 supra.
 

 [5]
 

 Plaintiff and Feick subsequently filed separate complaints.
 

 [6]
 

 The circuit court’s order stated that plaintiff
 

 shall not be allowed to introduce any physical, documentary or testimonial evidence relating to Plaintiffs psychological, emotional or physical condition, including evidence relating to emotional or psychological distress in support of claims for non-economic damages at the time of trial.
 

 [7]
 

 Swinkey’s counsel argued:
 

 She left the job as special prosecutor with the Friend of the Court in ‘93 when she went on disability. That was after she had not been re-appointed as assistant prosecutor. Had she remained in the special prosecutor’s job she would have essentially no economic loss, maybe a little in between but nothing following. I think she left that job because of foot surgery. I think those medical records are relevant to that.
 

 Also, we have information attached to our motion indicating that she applied for disability in 1992. It looks like after she lost the election but before the change over in ‘93. And in fact she has had some disability at that point that would have prevented her from continuing on as assistant prosecutor, that is also relevant to our defense in this matter.
 

 Plaintiff’s counsel responded:
 

 
 *718
 
 You are talking about a period of time pre-damage. She applied for disability prior to the time she was terminated. She was apparently turned down, although I don’t know because I haven’t seen those records. She has continued to work thereafter.
 

 Subsequent to being terminated she applied for disability and received it. We don’t mind them knowing about that period of time, what the payments were for, what period of time. She has readily admitted when she was disabled. The only period of time that there was actually an application for disability that is relevant to this case [is] after she was terminated [and] she received benefits for.
 

 [8]
 

 The plaintiffs in
 
 Schlagenhauf
 
 were bus passengers injured when the bus struck a tractor-trailer in the rear. The plaintiffs sued the bus company, the bus driver, the owner of the tractor and the owner of the trailer and the driver of the tractor-trailer. The tractor owner asserted in his answer that the bus driver was not mentally or physically able to drive the bus, and the trailer owner cross-claimed, alleging that the bus driver’s eyes and vision were impaired and deficient. Both petitioned the court for an examination of the bus driver under FR Civ P 35 by various specialists, including an ophthalmologist. The district court ordered the examinations without a hearing. The Supreme Court reversed because the tractor-trailer owners failed to make the necessary showing that the bus driver’s physical or mental condition was “in controversy” or that “good cause” was shown for the examination.
 
 Schlagenhauf, supra
 
 at 119-120.
 

 [9]
 

 The
 
 Schlagenhauf
 
 Court recognized that there are situations where the pleadings alone are sufficient to put mental or physical condition “in controversy,” such as when a plaintiff in a negligence action alleges mental or physical injury.
 
 Schlagenhauf, supra
 
 at 119.
 

 [10]
 

 The plaintiffs complaint in
 
 Hyde
 
 alleged that as a result of the defendant’s racial discrimination, he suffered “mental anguish, outrage, embarrassment and humiliation.” When the defendant sought discovery of the plaintiffs mental history, the plaintiff asserted the physician-patient privilege and stated that he was not claiming psychiatric injury or exacerbation of a preexisting psychological or psychiatric condition.
 
 Hyde, supra
 
 at 519-520.
 

 In response to the defendant’s motion in limine to preclude presentation of any evidence of emotional distress at trial, the plaintiff argued that MCR 2.314(A)(1) did not apply because as long as his claim for noneconomic damages was restricted to embarrassment, humiliation, outrage, and indignation, the medical and psychological records were not relevant and were not likely to lead to any relevant or admissible evidence. The trial court ruled that it would permit the plaintiff to introduce evidence regarding embarrassment, humiliation, outrage, and indignation, but not mental anguish and emotional distress.
 
 Hyde, supra
 
 at 521. The jury awarded the plaintiff noneconomic damages for outrage, indignation, humiliation, or embarrassment resulting from racial discrimination in his employment.
 
 Id.
 

 The
 
 Hyde
 
 panel reversed, concluding that the award was predicated on evidence of damages that the trial court should have excluded.
 
 Id.
 
 The
 
 Hyde
 
 panel also disagreed with the plaintiff’s argument that MCR 2.314(B) was not implicated because he did not actually consult or treat with any professional practitioner as a result of the injuries he sustained:
 

 Plaintiff did not resist discovery on the grounds that he had never been treated. Rather, he asserted the physician-patient privilege, thereby precluding defendant from discovering whether medical records in fact existed. It was the very invocation of the privilege itself that triggered the rule. Defendant should not be compelled to accept at face value plaintiffs assertion that his refusal of discovery was proper because there was nothing to discover.
 
 [Hyde, supra
 
 at 524, n 6 (citations omitted).]
 

 [11]
 

 FR Civ P 35(a) provides:
 

 (a) Order for Examination. When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party’s custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.
 

 MCR 2.311 is virtually identical:
 

 (A) Order for Examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician (or other appropriate professional) or to produce for examination the person in the party’s custody or legal control. The order may be entered only on motion for good cause with notice to the person to be examined and to all parties. The order must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and may provide that
 
 *727
 
 the attorney for the person to be examined may be present at the examination.
 

 [12]
 

 In
 
 Hyde,
 
 the trial court drew a distinction between “garden variety” psychic injuries such as hurt feelings, outrage, embarrassment, and humiliation, and “serious” injuries such as “emotional distress” and “mental anguish.” The
 
 Hyde
 
 Court determined that because Michigan treats all mental distress damages in the same fashion,
 
 Veselenak v Smith,
 
 414 Mich 567, 576; 327 NW2d 261 (1982), there can be no “two-tiered approach to emotional or psychic injuries.” We do not read
 
 Veselenak
 
 or the other cases cited in
 
 Hyde
 
 as precluding a commonsense assessment of the nature of a plaintiff’s emotional distress claims in determining whether a plaintiffs mental condition is “in controversy.”
 

 [13]
 

 The court also rejected the defendants’ argument that the plaintiffs allegation of myofascial pain syndrome placed his mental condition in controversy, noting that that syndrome was defined as irritation of the muscles and membranes of the back and neck causing chronic pain, was not mentioned in the Diagnostic and Statistical Manual as a recognized psychiatric disorder, and that the defendant had provided no evidence that it was a mental affliction.
 

 [14]
 

 In
 
 Turner, supra,
 
 the court held that the plaintiff, who brought suit in state court alleging gender and race discrimination in violation of title VII and other claims, did not place her mental condition “in controversy” within the meaning of FR Civ P 35(a) by claiming damages for humiliation, mental anguish, and emotional distress as a consequence of both the racial discrimination and sexual harassment she claimed to have suffered at her place of employment, and as a result of her termination and the defendants’ alleged defamation of her after her termination. The court denied the defendant’s motion to compel a psychiatric examination, noting that the weight of authority established that in order for a party seeking to compel a psychiatric examination under Rule 35 to establish that the other party’s mental condition is “in controversy” within the meaning of the rule,
 
 “the moving party must show more than that the party in question has claimed emotional distress.” Id.
 
 at 97 (emphasis added). The court noted that the plaintiff’s complaint made no separate claim for damages based on either intentional or negligent infliction of emotional distress, that her claim for emotional distress was a component of her federal and state claims, that she had not alleged that she suffered from a specific psychiatric injury or disorder as a result of the defendants’ conduct, that she did not claim to suffer from unusually severe emotional distress, did not intend to offer expert testimony regarding her emotional distress, and had not conceded that her mental condition was in controversy.
 
 Id.
 
 at 98. The court also noted:
 

 This court concludes that “emotional distress” is not synonymous with the term “mental injury” as used by the Supreme Court in
 
 Schlagenhauf v Holder
 
 [379 US 104; 85 S Ct 234; 13 L Ed 2d 152 (1964)], for purposes of ordering a mental examination of a party under Rule 35(a), and specifically disagrees with those few cases holding that a claim for damages for emotional distress, without more, is sufficient to put mental condition “in controversy” within the meaning of the Rule. If this were the law, then mental examinations could be ordered whenever a plaintiff claimed emotional distress or mental anguish. Rule 35(a) was not meant to be applied in so broad a fashion.
 
 [Turner, supra
 
 at 97.]
 

 [15]
 

 The
 
 Robinson
 
 court noted:
 

 The distinction between tort claims for damages stemming from emotional and mental damage and Title VII claims explains those instances in which courts have ordered mental examinations of sexual harassment plaintiffs. In
 
 Kelly v Lancaster,
 
 Case No. 83-572-Civ-J-14 (MD Fla, Dec 5, 1984),
 
 dism’d with prejudice by stipulation of the parties
 
 (MD Fla, Apr 10, 1985), plaintiff alleged severe mental, emotional, physical and other injuries and listed a psychiatrist as expert witness in support of the mental and emotional loss claims. This pattern repeats itself throughout the reported cases in this area.
 
 See Arnold v City of Seminole,
 
 614 F Supp 853, 857, 867 (ED Okla, 1985) (plaintiff alleged intentional infliction of emotional distress and introduced psychiatric testimony on her inability to return to work);
 
 Zabkowicz v West Bend Co,
 
 585 F Supp 635, 636 (ED Wis, 1984) (ordering plaintiff to undergo psychiatric evaluation),
 
 judgment reported at
 
 589 F Supp 780, 781 (ED Wis, 1984) (dismissing plaintiff’s claim for intentional infliction of emotionál distress),
 
 aff’d in relevant part,
 
 789 F2d 540 (7thCir, 1986);
 
 Lowe v Philadelphia Newspapers, Inc,
 
 101 FRD 296, 298-99 (ED Pa, 1983) (ordering plaintiff to undergo psychiatric evaluation),
 
 further proceedings reported at
 
 594 F Supp 123, 125 (ED Pa, 1984) (detailing controversy over plaintiff’s psychiatric problems;
 
 Sand v George P Johnson Co,
 
 33 Fair Empl Prac Cas (BNA) 716, 717 (ED Mich, 1982) (plaintiff introduced psychiatric testimony regarding her personality and defendant introduced psychiatric testimony in rebuttal);
 
 Ryzlak v McNeil Pharm Co,
 
 38 Fed R Serv 2d (Callaghan) 443, 444 (ED Pa, 1982) [available on WESTLAW, 1982 WL 113] (plain
 
 *732
 
 tiff’s claim of permanent emotional damage put her mental condition in controversy). [118 FRD 528-529.]
 

 [16]
 

 An additional case, not cited by defendants, is
 
 Smedley v Capps, Staples, Ward, Hastings & Dodson,
 
 820 F Supp 1227, 1232 (ND Cal, 1993), in which the court granted, without analysis, the defendants’ motion to compel an independent psychological examination of the plaintiff even though the plaintiff would not be presenting expert testimony at trial, nor seeking damages for medical expenses incurred relating to psychological injury.
 
 Smedley
 
 was disagreed with in
 
 Turner, supra
 
 at 93, 97-98, and to date no subsequent cases have followed
 
 Smedley
 
 with regard to the issue before us. The only statements regarding the issue made by the court in
 
 Smedley
 
 were “Defendants argue that the examination is needed to refute [the plaintiff’s evidence of “normal” emotional distress]. The court agrees.” 820 F Supp 1232.
 

 Although one article on the subject, Bales & May,
 
 The Availability of Rule 35 Mental Examinations in Employment Discrimination Cases,
 
 16 Rev Litig 1 (1997), includes
 
 Usher v Lakewood Engineering & Mfg Co,
 
 158 FRD 411 (ND Ill, 1994), in a list of cases purportedly adverse to the majority opinion reviewed above, we disagree with that contention because
 
 Usher
 
 presents additional circumstances. In
 
 Usher,
 
 the plaintiff had seen a clinical psychologist for depressive episodes after she was fired and after she had filed a sex discrimination charge, and again seen him several months later “when she assertedly experienced renewed depression based on factors stemming from this litigation, and had also
 
 *736
 
 claimed intangible [mental] harms” as a result of the alleged discrimination. The plaintiff did not object to the mental examinations per se but rather moved for a protective order on a number of other grounds. Under these circumstances, it cannot be said that the plaintiff in
 
 Usher
 
 merely alleged mental distress stemming from the alleged discrimination; rather, the plaintiff apparently claimed she suffered continuing depressive episodes, and she intended to present a psychologist expert to support her claims.
 

 The same commentator also includes, wrongly in our opinion,
 
 Shepherd v American Broadcasting Cos, Inc,
 
 151 FRD 194, 212 (D DC, 1993), rev’d in part and vacated in part on other grounds 314 US App DC 137; 62 F3d 1469 (1995), in the list of cases adverse to the majority position.
 
 Shepherd,
 
 like
 
 Usher, supra,
 
 is distinguishable because one of the plaintiffs in
 
 Shepherd
 
 retained a doctor to evaluate her claims and submitted his deposition in support of her claims that she suffered from Post-Traumatic Stress Disorder/Syndrome as a result of the defendant’s treatment, and the other plaintiff contended that he believed that he had been injured in the same way as the first plaintiff, suffered from the same symptoms and deserved similar damages.
 
 Shepherd, supra
 
 at 212-213. Under these circumstances, we agree that these plaintiffs placed their mental conditions in controversy.
 

 [17]
 

 Assuming such an amendment, plaintiff’s objection to interrogatories 16 and 17 on the basis that her mental condition is not “in controversy” would be supported by the case law interpreting the “in controversy” requirement. The trial court would be within its discretion in requiring that plaintiff answer interrogatory 14 as it pertains to actual treatment for the mental distress for which damages are sought. However, in the event that interrogatory 14 is answered in the affirmative, any further discovery under interrogatory 15 would have to be narrowly drawn and subject to in camera review.
 

 [18]
 

 In
 
 Price, supra,
 
 the plaintiffs brought a wrongful death suit under 42 USC 1983 after an arrestee was hogtied by sheriff’s deputies. The plaintiffs, who were the decedent’s wife and child, alleged loss of consortium. They asserted the psychotherapist-patient privilege with respect to the psychological records of the decedent’s wife in response to discovery requests. The decedent’s wife argued that the records were not discoverable because she waived any claim for extraordinary emotional distress or psychological damages.
 
 Price, supra
 
 at 622. The court had previously ordered that the disputed records be submitted for in camera review. After reviewing the records in camera, the court allowed the defendants access to the records:
 

 Defendants argue that Ms. Price’s psychological history is sufficiently in controversy so as to comprise good cause for discovery of the records ... because she has made a claim for loss of consortium, which places information regarding the marital relationship at issue. The character of the relationship between Ms. Price and her husband, (Daniel Price) is relevant to the issue of damages for the loss of care, comfort and society claimed by Ms. Price. The mental
 
 *738
 
 or emotional state of the relationship (i.e. the state of affection or dislike, happiness or unhappiness) is an issue affecting damages in this wrongful death action.
 

 Defendants also argue that Ms. Price, during her deposition, denied drug involvement and counseling, denied knowledge of Daniel Price’s drug use at the time of the incident underlying this case, and denied having any significant marital difficulties. Defendants have discovered, through Daniel Price’s psychological records and the deposition of Ms. Price’s sister, that Ms. Price’s representations regarding these issues were not completely accurate.
 

 Plaintiffs argue, however, that Ms. Price’s psychological state is not in issue, so as to make the psychological records of Ms. Price discoverable, because Ms. Price has waived any claim to extraordinary emotional distress or psychological damages. By making this argument, the Court assumes Plaintiffs are attempting to rely on case law addressing the appropriateness of a mental health examination under Fed R Civ P 35(a). It is true that a mental health examination under Rule 35(a) is not appropriate unless Plaintiff makes a claim for “mental injury” which goes beyond the ordinary claims of humiliation, mental anguish, and emotional distress.
 
 Turner v Imperial Stores, Inc,
 
 161 FRD 89 (SD Cal, 1995). However, Plaintiffs have cited no case law which would suggest that because the emotional distress is only “ordinary,” the opposing party is not entitled to at least discovery of any existing psychological records. The invasion of privacy occasioned by allowing opposing counsel to obtain copies of a plaintiff’s psychological records, where there is a claim of ordinary mental distress, is exceedingly less burdensome than a Rule 35(a) examination. Therefore, the Court does not find that discovery of psychological records is governed solely by the same “at issue” standard as under Rule 35(a). Rather, as here, the issues raised by the Plaintiffs and the relevance of the information govern the discoverability of the otherwise privileged information.
 

 Ann Price’s psychological records have been placed at issue in this case as a result of Plaintiff’s claim for loss of consortium and Ms. Price’s alleged inaccuracy of recollections regarding certain issues. Upon
 
 in camera
 
 review of Ann Price’s psychological records submitted for that purpose, the Court finds that they are certainly relevant to the issues in this case. Therefore, the Court finds that the psychotherapist-patient privilege has been waived. Plaintiffs are ordered to provide Defendants with a copy of the psychological records ....
 
 [Price, supra
 
 at 622-623 (emphasis added).]
 

 The Michigan Court Rules render
 
 Price
 
 inapposite. While the
 
 Price
 
 court concluded that the discoverability of the plaintiff’s psychological records was not contingent on the defendants’ satisfying the “in controversy” requirement of FR Civ P 35(a), but only whether the information is relevant to the issues in the case, under the Michigan Court Rules the “in
 
 *739
 
 controversy” requirement of MCR. 2.311 (governing mental examinations) (based on FR Civ P 35) is included in MCR 2.314 as well. See subsequent discussion at part DA. Thus, in Michigan, it must be established that a party’s mental condition is in controversy in order to discover medical records and in order to obtain a mental examination.
 

 Similarly, we conclude that cases in which courts discussed whether the plaintiff placed the plaintiff’s mental condition “in issue” in the context presented here—of discovery requests for psychiatric or psychological records are also not in point because they are premised on the question of general relevance, rather than the “in controversy” requirement. We do note, however, that, notwithstanding this distinction, several cases support plaintiff’s position.
 

 The plaintiff in
 
 Sabree v United Brotherhood of Carpenters & Joiners,
 
 126 FRD 422 (D Mass, 1989), alleged that the defendant union denied him membership on the basis of race and sought damages for lost wages and emotional distress. The defendant sought an order compelling the production of Sabree’s psychotherapist’s records under FR Civ P 34. Sabree opposed production of the records on the basis of the psychotherapist-patient privilege and provided the court with the records for in camera review.
 
 Sabree, supra
 
 at 423. The pertinent Massachusetts statute, Mass Gen L ch 233, § 20B, provided:
 

 [E]xcept as hereinafter provided, in any court proceeding and in any proceeding preliminary thereto ... a patient shall have the privilege of refusing to disclose, and preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient’s mental or emotional condition.
 

 The privilege granted hereunder shall not apply to any of the following
 
 communications:
 

 (c) In any proceeding, except one involving child custody,... in which the patient introduces his mental or emotional condition as an element of his claim or defense and the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.
 

 The
 
 Sabree court
 
 determined that the plaintiff did not place his mental condition at issue by alleging a garden variety claim of emotional distress:
 

 [T]his Court finds that no exception to the psychotherapist-patient privilege applies in the instant action. Sabree has not placed his mental condition at issue. Sabree makes a “garden variety”
 
 *740
 
 claim of emotional distress, not a claim of psychic injury or psychiatric disorder resulting from the alleged discrimination.
 
 [Sabree, supra
 
 at 426.]
 

 In
 
 Broderick v Shad,
 
 117 FRD 306 (D DC, 1987), the plaintiff brought a sex discrimination suit under title VII. The defendants requested all of the plaintiff’s medical records from 1975 to the present, arguing that the plaintiff had put her emotional and mental health at issue by alleging that she suffered severe psychological stress, recurring headaches, and insomnia as a result of working for the defendant. The plaintiff objected to the request, arguing that she waived the physician-patient privilege only for relevant medical evidence, and that there was no such evidence. The plaintiff offered an affidavit stating that she did not seek or receive medical treatment for psychological stress, headaches, or insomnia from 1975 to the present. After noting that the defendant’s discovery request was overbroad because the plaintiff did not become employed by the defendant until 1979, the court denied the defendant’s motion, stating:
 

 We agree with plaintiff that she has only waived her privilege regarding medical records that could fairly be considered within the scope of ¶ 80 of the complaint. The focus of this action is not on plaintiff’s physical or mental injuries, but rather on the alleged discrimination and harassment by the sec. Since Broderick has offered a sworn statement that she has not sought or received medical treatment for the conditions alleged in ¶ 80 of her complaint and that no relevant medical records exist, we deny as irrelevant and intrusive defendant’s motion to compel a wholesale investigation of plaintiff’s medical history over the past 11 years.
 
 [Id.
 
 at 309.]
 

 In
 
 Smith v J I Case Corp, supra
 
 at 232, the court determined that the defendant was not entitled to the plaintiff’s psychological records, with the exception of psychologists’ bills the plaintiff claimed were compensable damages:
 

 Any psychiatric disorders from which plaintiff has suffered are not relevant to this case. Further, so long as plaintiff does not claim that psychological treatment for the “embarrassment” which he suffers as a result of his injury is compensable, I shall not require him to provide defendant with records of therapy sessions in which he discussed this issue.
 

 In
 
 Bridges, supra,
 
 a sexual harassment case brought under title VH and New York law, the defendants sought mental examinations of the plaintiffs under FR Civ P 35(a), as well as permission to question the plaintiffs and their therapists about the plaintiffs’ psychological histories, in response to which the plaintiffs sought a protective order limiting the scope of discovery under FR Civ P 26(c).
 
 Bridges, supra
 
 at 220. The court determined:
 

 
 *741
 
 Although having to answer questions about their personal histories is to some extent an intrusion in their privacy . . . such an inquiry is warranted since plaintiffs are seeking compensation for their mental anguish. Moreover, since plaintiffs seek to prove that they have suffered emotional distress as a result of the sexual harassment through their testimony
 
 and the testimony of their therapists,
 
 defense counsel has a right to inquire into plaintiffs’ pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related. Indeed, as far as the testimony of their therapists is concerned, defendants must be allowed to inquire into all relevant information upon which the therapists’ opinions is based, not necessarily only information directly related to their employment.
 
 [Id.
 
 at 223 (citations omitted; emphasis added).]
 

 Bridges
 
 is distinguishable from the instant case for a number of reasons. First, the plaintiffs in
 
 Bridges
 
 did not assert a privilege in response to the defendant’s discovery requests, but rather sought a protective order limiting the scope of discovery under FR Civ P 26(b). The standard under FR Civ P 26(b), absent the assertion of a privilege, is relevance. See
 
 Bridges, supra
 
 at 222-223. Second, the
 
 Bridges
 
 plaintiffs sought to prove their emotional distress through the testimony of their therapists as well as their own testimony, unlike the plaintiffs in the instant case.