Lauren SMEDLEY, Plaintiff,

v.

CAPPS, STAPLES, WARD, HASTINGS
AND DODSON, a California corpora-
tion; James E. Allen; William Staples;
John Hollingshead; Jeffrey Nossen;
Kenneth Ward; and Does 1 through 25,
inclusive, Defendants.

No. C 91–2514 BAC.

United States District Court,
N.D. California.

May 18, 1993.

Jonathan H. Siegel, Eggleston, Siegel & LeWitter, Oakland, CA, for plaintiff.

Richard E. Dodge, McNamara, Houston, Dodge, McClure & Ney, Walnut Creek, CA, for defendants.

### ORDER

CAULFIELD, District Judge.

Plaintiff Lauren Smedley has filed a motion for summary judgment on her Cal. Labor Code § 1101 claim. Defendant has filed a motion to dismiss plaintiff's emotional distress claims. Upon review of the briefs and arguments of the parties in support of and in opposition to these motions, and good cause appearing therefrom, plaintiff's motion is DENIED; defendants' motion is DENIED in part and GRANTED in part.

### FACTS AND BACKGROUND

Plaintiff Lauren Smedley was hired by defendants CAPPS, STAPLES, WARD, HASTINGS & DODSON, James Allen, William Staples, John Hollingshead, Jeffrey Nossen and Kenneth Ward (defendants or "the firm") as an associate in the Spring of 1990 and started work on April 4, 1990. During the relevant time period, Ward was the partner at the firm in charge of associates. Defendants learned of plaintiff's sexual orientation shortly after she was hired and they admit that, to their knowledge, there had never been a gay or lesbian employee at the firm. Apparently while distributing paychecks, defendant Hollingshead noticed a heart-shaped picture frame containing a photograph of plaintiff and her companion, which Hollingshead showed to defendants Nossen and Allen. Plaintiff alleges that defendant Ward also saw the photograph and that he expressed the strongest opinions about employees bringing political and controversial issues into the office. Ward admits that he feels employees should refrain from bringing up controversial issues at social events. It is undisputed that on or about September 1990, during a meeting with plaintiff, Ward in-

structed her that he "did not think sexual preference was something that—the kind of discussion that should be initiated by members of the firm at the firm's social events." During deposition Ward clarified that he believed a person's sexual orientation is something that should be left at home.

On September 6, 1990, Ward wrote a note to plaintiff in which he stated:

> When I said your sexual preference should not be an issue, I meant that given our clientele it would not be appropriate to discuss lesbian rights, groups, activities, etc.

Plaintiff asserts that as a result of Ward's comments, she curtailed her activities with the Bay Area Lesbian Feminist Bar Association ("BALFBA"), of which she was a co-chair. She maintains that she felt she would have been fired if she discussed her lesbianism at firm social events, so she refrained from doing so. On March 4, 1991, an article in the Daily Journal about BALFBA identified plaintiff as an associate in defendant firm and quoted plaintiff as stating that "being out" at work would help other lesbian attorneys brave the threat of discrimination. On April 1, 1991, shortly after the article was published, plaintiff was terminated.[1]

### DISCUSSION

I. *Plaintiff's Motion for Summary Judgment*

A. Summary Judgment Standard

Summary judgment is appropriate where "there are no genuine issues as to any material fact and ... the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be granted when it can be determined that judgment may be entered as a matter of law. *Pepper and Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391 (9th Cir. 1977). All reasonable inferences from the evidence are to be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby,*

---

1. Plaintiff also points out that Ward admits asking Diane Tweedy, during an interview for an associate position at the firm, "whether she had a cause," and that he then "made reference to

somebody else in the firm that had a cause which [he] thought was interfering with their ability to be a good attorney."

*Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the movant meets its burden of establishing that there is no genuine issue as to any material fact, the nonmovant must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof at trial. *British Motor Car Distributing v. San Francisco Auto,* 882 F.2d 371, 374 (9th Cir.1989). The nonmovant "must come forward with specific facts, not allegations, to show that factual issues remain for trial." *DeHorney v. Bank of America Nat'l Trust and Savings,* 879 F.2d 459, 464 (9th Cir.1989).

### B. Political Activities

In this case, the court is called upon to interpret California Labor Code § 1101 which reads, in pertinent part:

No employer shall make, adopt, or enforce any rule, regulation or policy:

(a) Forbidding or preventing employees from engaging or participating in politics. . . .

(b) Controlling or directing, or tending to control or direct the political affiliation of employees.

The central, and most difficult, interpretive issue regarding the statute is which types of political actions and affiliations are protected against arbitrary action by a private employer which suppresses or directs employees' political activities. Another problematic issue is the meaning of the language of the statute, in this case, what is meant by "rule, regulation or policy."

Against a background of cases defining political activity in broad terms,[2] the California Supreme Court concluded that the fight against discrimination on the basis of sexual preference was political in nature. "Measured by these standards, the struggle of the homosexual community for equal rights, particularly in the field of employment, must be recognized as a political activity." *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.,* 24 Cal.3d 458, 488, 156 Cal.Rptr. 14, 595 P.2d 592 (1979). *Gay Law Students* interprets the statute as protecting those who identify themselves as "manifest homosexuals," who defend homosexuality, or who are identified with activist homosexual organizations. *Gay Law Students* also briefly discusses the political aspiration of the gay community for equal rights: "[o]ne important aspect of the struggle for equal rights is to induce homosexual individuals to come out of the closet, acknowledge their sexual preference, and to associate with others in working for equal rights." *Id.*

In the aftermath of *Gay Law Students,* there is no question that a cause of action exists under § 1101 when an employer makes, adopts or enforces any rule, regulation or policy that has as its purpose or succeeds in preventing or controlling the sexual preference-oriented political activities (aimed at achieving equal rights) of an employee. 69 Ops.Cal.Atty.Gen. 80 (1986). However, to grant plaintiff's motion for summary judgment would require the court to accept plaintiff's personal interpretations of events without benefit of a trial and to draw clear inferences from ambiguous deposition testimony.

Plaintiff's motion is largely based on the deposition and written statements of defendant Ward. Specifically, she alleges that Ward instructed her not to initiate discussions about her sexual orientation at the firm's social events. In addition to Ward's deposition testimony, plaintiff offers a note sent to her by Ward in which he states (referring to the firm's social events), "Given the firm's clientele, it would not be appropriate to discuss lesbian rights groups activities, etc." Assuming *arguendo* that Ward's pronouncements constituted a "rule, regulation or policy forbidding plaintiff from participating in protected activity," it is still not clear that the activity in question—discussion of lesbianism at firm social events—satisfies the definition of "political activity" as propounded in *Gay Law Students.* *Gay Law Students* does not hold that any discussion of sexual preference in any forum is protected political

---

**2.** *N.A.A.C.P. v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Tinker v. Des Moines School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *N.A.A.C.P. v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

activity. That case addressed an employer which did not employ any gay men or lesbians. The opinion is silent, as is the statute, about whether or not discussion of sexual preference by a lesbian at private firm functions (as compared to activities outside of work) is a political activity.

If, for example, plaintiff were prevented from discussing gay rights with other employees at firm gatherings, this might well be construed as an effort to prevent her from associating and communicating with or organizing other individuals in order to work for equal rights. Similarly, if plaintiff had been instructed to curtail her gay-oriented political activities outside the office, this would constitute a violation of § 1101. However, it is by no means certain that discussions of lesbianism with clients of her firm at firm social events are political activities as contemplated by the California Supreme Court in *Gay Law Students.*[3]

In furtherance of her motion for summary judgment under § 1101, plaintiff states that she was terminated from her employment with defendants shortly after an article on the BALFBA appeared in the San Francisco Daily Journal. The article identified plaintiff as an associate attorney at defendant firm and as co-chair of the BALFBA. The court is asked to infer the existence of a direct causal linkage between the appearance of the article and the termination by plaintiff's employer—that, in effect, defendants were ultimately motivated to fire her because of her participation in this particular political activity or association. Plaintiff offers no affidavits or other evidence in support of her allegation, nor does she provide incontrovertible facts or testimony. The connection between the article and her termination remains an unresolved issue of material fact that must be decided by a jury.

Essential issues of triable fact remain. The most significant among them is whether defendants, in violation of § 1101, made, adopted or enforced any rule, regulation or policy forbidding or preventing plaintiff from engaging or participating in politics or otherwise controlling, directing or coercing via pressure or threats of termination, plaintiff's political activities or affiliations.

Given the absence of clear and convincing evidence offered by plaintiff, the court, as matter of law, rules that several triable issues of fact exist as to plaintiff third cause of action alleging defendants' violation of § 1101. Plaintiff will have the opportunity to present a case before the trier of fact.

## II. Defendants' Motion to Dismiss Plaintiff's Emotional Distress Claims

### A. Background

On October 21, 1992, defendants filed a motion to compel plaintiff to undergo an independent psychiatric examination for purposes of investigating plaintiff's emotional distress claims. In opposition to defendants' motion, plaintiff stated that she intended to dismiss her claims for negligent and intentional infliction of emotional distress, and that she was not claiming any emotional distress damages beyond that which is normally experienced by plaintiffs under such circumstances. Due to the vagueness of this response, the court issued an order directing plaintiff to file a status conference statement clarifying her position on emotional distress damages. Plaintiff filed the necessary state-

---

**3.** The courts have traditionally interpreted the statute as being intended to defend employees engaged in traditional political activity from reprisal by their employer. In *Lockheed Aircraft Corp. v. Superior Court,* 28 Cal.2d 481, 485, 171 P.2d 21 (1946), the California Supreme Court commented that the statute concerned activities related to or connected with the orderly conduct of government and the peaceful organization, regulation and administration of the government. Sections 1101 and 1102 protect the fundamental right of employees to engage in political activity without interference by employers. *Fort v. Civil Service Commission,* 61 Cal.2d 331, 335, 38 Cal.

Rptr. 625, 392 P.2d 385 (1964); 69 Ops. Cal. Atty. Gen. 80 at 3. Yet no court has stated that the rights protected under §§ 1101 and 1102 are unlimited. Even under *Lockheed,* the proselytizing Republican described in the analogy might be lawfully terminated (the employer was not prevented from discharging an employee whose loyalty to the United States was not demonstrated to its satisfaction). More recently, *Mitchell v. International Ass'n of Machinists,* 196 Cal.App.2d 796, 16 Cal.Rptr. 813 (1961) contains the strong suggestion that an employer may use its power to curb an employee's advocacy of political views when the employee's political activities are patently in conflict with the employer's interests.

ment on December 28, 1992. On January 12, 1993, defendants filed the instant motion seeking dismissal of all of plaintiff's claims which contain an emotional distress element. In the alternative, defendants seek an order compelling plaintiff to submit to the previously requested psychological examination.

## B. Discussion

Since defendants filed this motion, the parties have stated agreement on several of plaintiff's causes of action. Plaintiff agrees that the following causes of action should be dismissed: Sixth (sex discrimination in violation of Ca. Const. art I, § 8); Eighth (assault and battery); Ninth (intentional infliction of emotional distress); Tenth (negligent infliction of emotional distress); Eleventh (breach of covenant of good faith and fair dealing); and Thirteenth (violation of Walnut Creek Ordinance 440–2).

By this motion, defendants seek dismissal of the following causes of action: Fifth (violation of California Labor Code § 6310) and Seventh (wrongful termination in violation of public policy).

### 1. Plaintiff's Fifth Cause of Action

■ Plaintiff's fifth cause of action attempts to state claims under California Labor Code § 6310. Section 6310 prohibits an employer from retaliating against an employee for complaining to the California Department of Occupational Safety and Health. ("OSHA"). Defendants maintain that § 6310 does not create a private right of action. Plaintiff maintains that § 6310 creates a public policy claim.

Though not cited by defendants, § 6312 provides:

> [t]hat any employee who believes that he or she has been discharged or otherwise discriminated against by any person in violation of section 6310 or 6311 may file a complaint with the Labor Commissioner pursuant to section 98.7.

Section 6310 claims must be filed with the Division of Labor Standards Enforcement. Plaintiff cites to no authority which supports

her argument that § 6310 creates a public policy cause of action. Accordingly, plaintiff's fifth cause of action under section 6310 must be DISMISSED.[4]

### 2. Plaintiff's Seventh Cause of Action

■ Plaintiff's seventh cause of action alleges that her employment was terminated in violation of public policy of California, specifically: (a) the state's fundamental interest in compliance with reduction of work place hazards; (b) the public policy of freedom of association, as established in Article I, §§ 1, 2 and 3 of the California Constitution as well as Cal. Labor Code § 6399.7; (c) the state's substantial interest in health and safety of California workers; (d) the state's fundamental policy against retaliation for exercising any of the rights under the labor code, including whistle-blowing. 2 Cal. OSHA, Labor Code §§ 98.6, 1102.5, 2856, 6310–12; (e) the policy in regard to the City of Walnut Creek regulation of smoking environments at the work place; (f) the policy against sex discrimination; (g) the policy against retaliation for engaging in political activity.

Defendants seek dismissal of this claim on three grounds: (1) with the exception of the Walnut Creek ordinance claim, all of the claims which encompass this cause of action are specifically pleaded elsewhere in plaintiff's complaint; (2) Walnut Creek Ordinance 440–2 does not create a private right of action; and (3) the injury complained of with respect to the Walnut Creek ordinance (failure to provide a smoke-free environment), is preempted by workers compensation law.

Because the court viewed plaintiff's opposition as inadequately addressing defendants' arguments seeking dismissal of this claim, the court invited plaintiff to file a supplemental opposition explaining her claim. In her supplemental filing, plaintiff made clear that her seventh cause of action is essentially one stating a claim of retaliatory termination resulting from her complaints regarding defendants' failure to provide a smoke-free environment in compliance with Walnut Creek's anti-smoking ordinance. As defendants' motion did not address plaintiff's seventh cause

---

4. However, it should be noted that § 6310 does not preempt common law causes of action for retaliatory discharge. *See Hentzel v. Singer Co.,* 138 Cal.App.3d 290, 188 Cal.Rptr. 159 (1982).

of action as articulated in plaintiff's supplemental filing, defendants' motion to dismiss this claim is DENIED without prejudice to defendants' renewing their motion on this claim at a later time.[5]

C. Defendants' Motion to Compel Plaintiff to Undergo an Independent Psychological Examination

In the alternative, defendant renews its motion to compel plaintiff to submit to a psychological examination. Plaintiff maintains that she will not be presenting any expert testimony at trial. Nor does she intend to seek damages for medical expenses incurred relating to psychological injury. However, she does intend to present evidence of "normal" emotional distress. Defendants argue that the examination is needed to refute such evidence. The court agrees. Accordingly, defendants' motion to compel plaintiff to submit to an independent psychological examination is GRANTED.

### CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Plaintiff's motion for summary judgment is DENIED.

2. Plaintiff's fourth, fifth, eighth, ninth, tenth, eleventh and thirteenth causes of action are hereby DISMISSED WITH PREJUDICE.

3. Plaintiff's California Labor Code § 1102 claim (third cause of action) is DISMISSED WITH PREJUDICE.

4. Plaintiff's claim under Article I, § 2 of the California Constitution (freedom of association; sixth cause of action) is hereby DISMISSED WITH PREJUDICE.

5. Defendant's motion to compel plaintiff to submit to an independent psychological examination is GRANTED.

IT IS SO ORDERED.

---

5. On March 17, 1993, plaintiff submitted to the court a listing of the various causes of action which she had previously agreed to dismiss and which she intends to voluntarily dismiss. In that letter, plaintiff also identified the causes of action remaining. Plaintiff's seventh cause of action does not appear on either list.