**Kelly E. STUFF and Ken B. Stuff, Appellants–Plaintiffs,**

v.

**Zachary L. SIMMONS, Appellee–Defendant.**

No. 49A02–0505–CV–416.

Court of Appeals of Indiana.

Dec. 12, 2005.

---

William E. Winingham, Christopher G. Stevenson, Wilson, Kehoe, & Winingham, Indianapolis, for Appellants.

Thomas E. Rosta, Kopka, Pinkus, Dolin, & Eads, PC, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Kelly E. Stuff (Kelly) and Ken B. Stuff (Ken) (collectively, the Stuffs), appeal the trial court's decision to grant Appellee–Defendant's, Zachary L. Simmons (Simmons), Motion to Compel Kelly to Submit for Neuropsychological Examination pursuant to Indiana Trial Rule 35.

We reverse and remand for further proceedings.

### ISSUE

The Stuffs raise one issue on appeal, which we restate as follows: Whether the trial court properly exercised its discretion by ordering Kelly to undergo an independent neuropsychological examination pursuant to Indiana Trial Rule 35 when the Stuffs' personal injury claim only alleges general emotional distress normally associated with a physical injury and without asserting any specific mental injury.

### FACTS AND PROCEDURAL HISTORY

On April 10, 2002, at approximately 6:13 p.m., Kelly was driving her vehicle southbound on I–465 on the Westside of Marion County, while Simmons was driving his pickup truck at high speed, weaving in and out of traffic behind Kelly. Simmons lost control of his vehicle and crashed into the rear of Kelly's car. After the accident, Kelly was transported to St. Vincent's emergency room where she was treated for cervical and lumbosacral strain. The emergency room released her to her family doctor.

On April 18, 2002, Kelly saw her family doctor, John Kersteff M.D. (Dr. Kersteff), complaining of neck and upper back pain as well as some lower back pain. Upon examining her, Dr. Kersteff located tenderness in Kelly's back and neck muscles and prescribed her anti-inflammatory and muscle relaxant medications. After several months of physical therapy, Dr. Kersteff ordered an MRI and referred Kelly to Steven E. Levine, M.D. (Dr. Levine), who specializes in interventional pain management. Dr. Levine gave Kelly cervical spine facet joint injections to numb the joints. In May of 2003, Dr. Levine performed a cervical epidural, injecting Kelly's spine with an anti-inflammatory. At the same time, Dr. Levine also gave Kelly trigger point injections along the spine to reduce muscle spasms. Thereafter, in June of 2003, Dr. Levine performed a facet rhizotomy on Kelly's neck. Through 2004, Kelly continued to experience pain in her neck and mid-back.

On December 1, 2003, the Stuffs filed a complaint against Simmons, alleging negligence resulting in severe and permanent injuries as well as considerable pain and suffering and emotional distress. During the litigation, Simmons' insurer, State Farm, requested Kelly to submit to an independent medical exam (IME) pursuant to Indiana Trial Rule 35. The Stuffs agreed to State Farm's request and on October 4, 2004, Kelly was examined by Dr. Theodore A. Nukes, M.D. (Dr. Nukes). Dr. Nukes concluded that because there were "minimal physical and neurologic exam findings," Kelly was magnifying her symptoms and neuropsychological testing/MMPI should be considered to assist in determining the level of symptom magnification. (Appellant's App. p. 23). Kelly

refused to submit to neuropsychological testing.

On March 2, 2005, Simmons filed his Motion to Compel Kelly to Submit to Neuropsychological Examination. Two days later, on March 4, 2005, Kelly filed her objection to Simmons' motion. On March 28, 2005, a hearing was held during which the trial court granted Simmons' motion and ordered Kelly to make herself available for a neuropsychological examination by Gregory Hale, M.D. (Dr. Hale) within forty-five days. On April 1, 2005, Kelly filed her motion to reconsider, which was followed on April 15, 2005, by a Verified Supplemental Motion to Reconsider asserting that the examination could not be completed within the allotted forty-five days, and that therefore, the trial scheduled for June 14, 2005 would need to be rescheduled. On April 18, 2005, the trial court denied Kelly's verified supplemental motion. On April 25, 2005, the trial court certified its ruling for interlocutory appeal. We accepted the appeal on June 27, 2005.

Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

■ The standard of review in discovery issues is an abuse of discretion. *Old Indiana Ltd. Liability Co. v. Montano ex rel. Montano*, 732 N.E.2d 179, 183 (Ind.Ct. App.2000), *reh'g denied, trans. denied*. An abuse of discretion occurs when a trial court reaches a conclusion that is against the logic and natural inferences which can be drawn from the facts and the circumstances before the trial court. *Id.* Moreover, an abuse of discretion occurs when the trial court misinterprets or misapplies the law. *Id.*

■ Our supreme court has held that generally, "parties may obtain discovery regarding any matter relevant to the subject matter involved in the pending action, or which appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Jacob v. Chaplin*, 639 N.E.2d 1010, 1012 (Ind.1994)). Our discovery rules are designed to encourage a liberal discovery procedure, the purposes of which are to provide parties with information essential to the litigation of all relevant issues, to eliminate surprise and to promote settlement, with a minimum of court involvement in the process. *Id.* (quoting *Canfield v. Sandock*, 563 N.E.2d 526, 528 (Ind.1990), *reh'g denied* ).

### II. *Indiana Trial Rule 35*

In their sole issue, the Stuffs contend that the trial court abused its discretion by compelling Kelly to submit to neuropsychological testing pursuant to Ind. Trial Rule 35. Indiana Trial Rule 35 (emphasis added) provides as follows:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is *in controversy*, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his custody or legal control. The order may be made only on *motion for good cause shown* and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Specifically, referencing the requirements of T.R. 35, the Stuffs assert that Simmons failed to affirmatively show that Kelly has put her mental condition in controversy and that he has good cause for requesting Kelly to undergo neuropsychological test-

ing. Focusing on the language in their Amended Complaint, filed April 7, 2004, the Stuffs allege that Kelly "suffered severe and permanent injuries, endured considerable pain and suffering, [and] suffered emotional distress...." (Appellant's App. p. 11). The Stuffs characterize these allegations as general emotional distress normally associated with a physical injury.

In support of his motion to compel Kelly to submit to neuropsychological testing, Simmons relies on the results of the IME, dated October 4, 2004, with Dr. Nukes. In his evaluation of Kelly, Dr. Nukes reported that due to the fact that there existed minimal physical and neurological exam findings, he opined that Kelly appeared to be magnifying her symptoms. He further concluded that while Kelly may have suffered a permanent impairment, it was difficult to determine any amount or level for it due to the symptom magnification, and suggested Kelly to undergo neuropsychological testing. Kelly refused and Simmons submitted his motion to compel pursuant to T.R. 35.

The parties did not proffer, nor did our research discover any Indiana cases interpreting the "in controversy" and "good cause" language of T.R. 35. As such, the question presented by the Stuffs is a matter of first impression. Because Indiana's Trial Rule 35 largely duplicates the language of its equivalent rule of the Federal Rules of Civil Procedure, the federal courts' construction of Federal Rule 35 is helpful in our analysis of T.R. 35.

The genesis of the federal courts' construction is the oft-quoted Supreme Court case of *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), stating that the "in controversy" and "good cause" requirements of the rules "are not met by mere conclusory allegations of the pleadings." However, the *Schlagenhauf* Court made it clear that,

if a party's pleadings standing alone do not place her mental condition in controversy, that is not the end of the inquiry. *Id.* *Schlagenhauf* recognizes that a defendant may place an opposing party's mental condition in controversy by independent evidence:

> The "in controversy" and "good cause" requirements of Rule 35 ... are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

> Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting the mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause," which requirements, ..., are necessarily related. This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases....

> It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.

*Id.* at 118–20, 85 S.Ct. 234. In *Schlagenhauf*, the Supreme Court also cautioned that sweeping examinations of a party who has not affirmatively put his mental condition at issue may not be routinely ordered simply because the party brings a personal injury action and general negligence is alleged. *Id.* at 120, 85 S.Ct. 234. Since the Supreme Court's decision in *Schlagenhauf*,

federal and out-of-state case law has further interpreted the two prongs of Rule 35.

### A. *In Controversy Requirement.*

■ In the instant case, Simmons concedes that he is not seeking the neurological examination solely based on the allegations of emotional distress, as described in the Stuffs' Amended Complaint, but rather, "combined with the independent evidence as presented through the opinions of Dr. Nukes, who performed an examination of [Kelly], as well as all applicable medical documentation and testimony of [Kelly], the mental condition of [Kelly] clearly is 'in controversy,' thereby satisfying that portion of the rule." (Appellee's Br. pp. 8–9).

Simmons' concession is well taken: few courts have held that a claim of emotional distress alone is sufficient to put a plaintiff's mental condition "in controversy" within the meaning of the rule.[1] Rather, most cases in which courts have compelled mental examinations pursuant to Federal Rule 35 involve something more than just a general, run-of-the-mill claim of emotional distress.

In *Anson v. Fickel,* 110 F.R.D. 184 (N.D.Ind.1986), which involved a complaint seeking compensation for injuries which plaintiff received in a traffic accident, the plaintiff sought compensation for both his physical injuries and for emotional distress. *Id.* at 186. Defendants requested a psychiatric examination of plaintiff alleging that after the accident in question, plaintiff had been confined to a hospital, and that the hospital records reflected that, on occasion, plaintiff had attempted to conceal from, or fabricate his injuries to physicians in order to seek recovery of damages. *Id.*

at 185. Noting that plaintiff's psychiatric treatment had him confined to the psychiatric ward, the *Anson* court stated that "it must be assumed that plaintiff was experiencing problems which were more severe than the emotional distress which frequently accompanies personal injuries." *Id.* The court concluded that the nature and seriousness of the emotional distress claimed by plaintiff was an important issue of the lawsuit, and granted defendants' motion for a psychiatric examination. *Id.*

Likewise, in *Gepner v. Fujicolor Processing Inc.,* 637 N.W.2d 681 (N.D.2001), *reh'g denied,* Gepner sought damages from Fujicolor for a work injury, wrongful termination, and loss of consortium. *Id.* at 684. Fujicolor's motion for an independent mental examination was granted by the trial court. *Id.* at 688. The North Dakota supreme court stated that an opposing party may put a party's mental condition in controversy by and through independent evidence. *Id.* at 690. In *Gepner,* Fujicolor had presented independent evidence that Gepner was being treated for depression, had demonstrated extreme pain behaviors on a work tolerance assessment and on one occasion after the work injury suffered seizure-like symptoms which an emergency room physician believed could be related to a "psychological overlay/anxiety reaction." *Id.* The court further noted that Fujicolor had presented evidence suggesting there may have been an underlying psychological basis for, or exaggeration of, Gepner's pain. *Id.* Under these unique circumstances, the *Gepner* court concluded that it was within the trial court's discretion to determine that Fujicolor had sufficiently demonstrat-

---

1. Research revealed only three cases: *Jansen v. Packaging Corporation of America,* 158 F.R.D. 409 (N.D.Ill.1994); *Smedley v. Capps, Staples, Ward, Hastings & Dodson,* 820 F.Supp. 1227 (N.D.Cal.1993); and *Zabkowicz v. West Bend Company,* 585 F.Supp. 635 (E.D.Wis.1984).

ed that Gepner's mental condition was in controversy. *Id.*

Also, in *Womack v. Stevens Transport, Inc.* 205 F.R.D. 445 (E.D.Pa.2001), plaintiff initiated a personal injury action, contending that he sustained physical and mental injuries due to an automobile accident involving a truck operated by one of defendant's employees. *Id.* at 446. During the discovery process, defendant obtained plaintiff's psychiatrist's evaluation indicating that plaintiff reported a prior history of depression associated with vegetative symptoms. *Id.* The court concluded that even though plaintiff alleges that he is unable to work as a result of physical injuries, in light of plaintiff's psychological history he may be unable to work because of psychological problems which existed prior to the accident. *Id.* at 447. Accordingly, the *Womack* court deemed the mental condition to be in controversy. *Id.*

At the other end of the spectrum, several courts have specifically held that a general claim of emotional distress is not sufficient to place plaintiff's mental condition in controversy. In *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D.Cal.1995), a terminated employee claimed damages for humiliation, mental anguish, and emotional distress as a consequence of both racial discrimination and sexual harassment against her employer. *Id.* at 92. The only evidence offered by defendants in support of their motion to compel psychiatric examination was that during discovery Turner had elaborated extensively regarding how her mental anguish and emotional distress had manifested itself. *Id.* at 97. After a detailed evaluation of the case law, the *Turner* court refused to implement a broad sweeping rule where a claim for damages for emotional distress without more is sufficient to compel plaintiff to undergo a mental evaluation. *Id.; See also Bridges v. Eastman Kodak Company,*

850 F.Supp. 216 (S.D.N.Y.1994); *Sabree v. United Brotherhood of Carpenters & Joiners of America, Local No. 33*, 126 F.R.D. 422 (D.Mass.1989).

Based on the established case law in this area, several courts have inferred that plaintiffs can be ordered to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is in controversy within the meaning of Federal Rule 35. *See, e.g., Gepner,* 637 N.W.2d at 689; *Turner,* 161 F.R.D. at 95.

In the case before us today, the Stuffs now seize on this five-factor litmus test contending that none of the factors are met. Simmons, however, does not dispute that Kelly's initial complaint involves nothing more than a general claim for damages for emotional distress. Nevertheless, he continues that Kelly's claim combined with Dr. Nukes' opinion that she is a malinger clearly put her psychological condition in controversy. In this regard, Simmons focuses on *Gepner* where the court ordered the plaintiff to submit to psychological testing based on presented evidence that there may be an underlying basis for, or exaggeration of, Gepner's pain. *Gepner,* 637 N.W.2d at 690. We are not persuaded.

*Anson, Gepner,* and *Womack* are clearly distinguishable from the case at hand. Unlike the referenced cases, here, Kelly is not alleging a permanent mental injury, a deep-seated emotional disturbance, or psychiatric problems. The record leaves no doubt that even though Kelly admitted in

her deposition that she suffered mental pain leading to depression or anxiety, she was never treated by a doctor or counselor for depression as a result of the accident. Furthermore, the record is completely devoid of any evidence that Kelly was ever treated for any type of mental or psychological illness prior to the collision. The record also reflects that even Dr. Nukes failed to diagnose any evidence that Kelly's injuries could be related to any pre-existing conditions.

We fail to see how the Stuffs' Amended Complaint comprising the standard request for pain and suffering and emotional distress in a personal injury claim without more would put Kelly's mental condition in controversy, warranting a compelled neuropsychological examination under T.R. 35. The evidence indicates that the Stuffs do not allege a specific cause of action for emotional distress, nor do they intend to offer expert psychological testimony to address the general emotional component of Kelly's injury. Dr. Nukes' broad conclusion that Kelly is magnifying her symptoms because of the minimal physical and neurologic exam findings was reached after a one-hour exam. We do not find that Dr. Nukes' general conclusion without any specificity or other indications that Kelly has a severe mental disorder raises to a level that puts Kelly's mental condition in controversy. *See Gepner,* 637 N.W.2d at 690.

■ Based on the evidence before us, we conclude that a mere routine allegation of damages for emotional distress does not place the party's mental condition in controversy. The plaintiff must assert or defendant must show a mental injury that exceeds the common emotional reaction to an injury or loss. To permit Simmons to compel a mental examination in the instant case because the Stuffs make a garden-variety claim of damages for emotional

distress would open the door to involuntary mental examinations in virtually every soft tissue injury case. We do not believe T.R. 35 was intended to authorize sweeping probes into a plaintiff's psychological past merely because she has been injured and makes a claim for emotional distress damages without more. Accordingly, we find that the trial court's decision ordering Kelly to submit to neuropsychological testing to be against the facts and circumstances of the case. *See Old Indiana Ltd. Liability Co.,* 732 N.E.2d at 183. Thus, the trial court abused its discretion and therefore, we reverse the trial court's decision.

### B. *Good Cause Requirement.*

■ Even though we acknowledge that our inquiry may end due to Simmons' failure to put Kelly's mental condition in controversy, however, because of the issue's novelty we will address the good cause requirement under T.R. 35.

Besides determining whether a plaintiff's mental condition is in controversy, both Federal Rule 35 and Indiana Trial Rule 35 require a showing that the defendant establishes good cause for the requested examination. In this regard, the *Womack* court stated that the good cause requirement turns on the relevance and need for the psychiatric IME. *Womack,* 205 F.R.D. at 447. Good cause requires a showing that the examination could adduce specific facts relevant to the cause of action and is necessary to the defendant's case. *Id.* The *Schlagenhauf* Court characterized the requirement as follows:

> The court must decide as an initial matter, and in every case, whether the motion requesting . . . a physical or mental examination adequately demonstrates good cause. The specific requirement of good cause would be meaningless if good cause could be sufficiently established

by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words "good cause," the Rules indicate that there must be greater showing of need under [Rule 35] than under the other discovery rules.

*Schlagenhauf*, 379 U.S. at 117–18, 85 S.Ct. 234. The court further clarified that "what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant." *Id.* at 118, 85 S.Ct. 234.

However, it should be noted that some courts have read *Schlagenhauf* as merging the "in controversy" and "good cause" requirement of Federal Rule 35 when plaintiff claims an ongoing mental injury in a negligence action. *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D.Conn.1994). Furthermore, the Texas Supreme Court in *Coates v. Whittington*, 758 S.W.2d 749 (Tex.1988), *reh'g denied*, appears to have distilled the good cause requirement into three elements: (1) an examination is relevant to issues that are genuinely in controversy in the case; (2) a party must show a reasonable nexus between the condition in controversy and the examination sought; and (3) a movant must demonstrate that it is not possible to obtain the desired information through means that are less intrusive than a compelled examination. *Id.* at 753.

In order to satisfy the good cause requirement, Simmons refers to Dr. Nukes opinion as to the potential psychological overlay of Kelly's alleged personal injuries. He continues that should the psychological exam not be mandated, the trier of fact will be left with an open-ended opinion from Dr. Nukes without the opportunity for Simmons to properly present his defense to the jury. However, Simmons' argument will only encourage a "battle of

the experts" with each party presenting its own experts at trial. We have held before that where the evidence is variable as to the nature, extent, and source of the injury, the jury is in the best position to determine the existence and amount of damages. *Pendleton v. Aguilar*, 827 N.E.2d 614, 625 (Ind.Ct.App.2005), *reh'g denied.* Consequently, we find Dr. Nukes' evaluation best left to the province of the jury. Therefore, we conclude that Simmons failed to satisfy the good cause requirement under T.R. 35.

### CONCLUSION

Based on the foregoing, we find that the trial court abused its discretion by ordering Kelly to undergo an independent neuropsychological examination pursuant to Indiana Trial Rule 35 when the Stuffs' personal injury claim only alleges general emotional distress normally associated with a physical injury and without asserting any specific mental injury.

Reversed and remanded for further proceedings.

BAKER, J., and MATHIAS, J., concur.