**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANTS:

**DAVID J. CUTSHAW**
**GABRIEL ADAM HAWKINS**
**KELLEY J. JOHNSON**
**TaKEENA M. THOMPSON**
Cohen & Malad, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**JAMES L. HOUGH**
**AMI ANDERSON NOREN**
Spangler, Jennings & Dougherty, P.C.
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY RIGGS and MARK ASHMANN, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1109-CT-394 |
| | ) | |
| MARK S. WEINBERGER, M.D., | ) | |
| MARK WEINBERGER, M.D., P.C., | ) | |
| MERRILLVILLE CENTER FOR | ) | |
| ADVANCED SURGERY, LLC, and | ) | |
| NOSE AND SINUS CENTER, LLC, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Jeffery A. Dywan, Judge
Cause No. 45D11-1011-CT-0210; 45D11-1009-CT-0175

**May 31, 2012**

**BAKER, Judge**

In this consolidated interlocutory appeal, appellants-plaintiffs Mark Ashmann and Jeffrey Riggs appeal the trial court's grant of a Motion for a Trial Rule 35 Psychological Examination filed by appellees-defendants Mark S. Weinberger, M.D.; Mark S. Weinberger, M.D., P.C.; Merrillville Center for Advanced Surgery, LLC; and Nose and Sinus Center, LLC, ( collectively, the Weinberger Entities). Specifically, referencing the requirements of Trial Rule 35, Ashmann and Riggs argue that the Weinberger Entities failed to show that Ashmann and Riggs put their mental condition in controversy, and that the Weinberger Entities had good cause for requesting the examinations. Finding no error, we affirm the decision of the trial court, and remand this cause for further proceedings consistent with this opinion.

## FACTS

Ashmann and Riggs filed their respective medical malpractice complaints against the Weinberger Entities on September 16, 2010, and November 24, 2010. Ashmann alleged that he became Weinberger's patient on April 3, 2003. Ashmann further alleged that Weinberger failed to comply with the applicable standards of care and that as a direct and proximate result of Weinberger's acts and omissions, Ashmann had suffered and would continue to suffer in the future "great pain, emotional distress and mental trauma." Appellants' App. p. 165. Ashmann described his emotional injuries as follows in his Reply Submission to the Medical Review Panel:

2

> Emotional injuries are also clearly relevant to this discussion. It is not unreasonable for Dr. Weinberger's patients, after Weinberger fled the country and appeared on "America's Most Wanted," after learning that Dr. Weinberger drilled holes in their maxillary sinuses in the wrong place, and after hearing that Dr. Weinberger did not do the surgeries that he said he would do, to be emotionally distraught and injured with feelings of being "duped." Emotional damages are particularly relevant in a case such as this, where Dr. Weinberger disappeared while actively treating [Ashmann]. Most recently, Dr. Weinberger's former patients, including [Ashmann], have had to relive the nightmare of his disappearance as news broke that Dr. Weinberger was found living in a tent on the side of the mountain in Italy in the middle of winter and, upon arrest, that he tried to harm himself to avoid extradition to the United States.

Appellants' App. p. 211-12.

Riggs alleged that he became Weinberger's patient on January 30, 2003. Like Ashmann, Riggs further alleged that Weinberger failed to comply with the applicable standards of care and that as a direct and proximate result of Weinberger's acts and omissions, Riggs had suffered and would continue to suffer in the future "great pain, emotional distress and mental trauma . . . ." Appellants' App. p. 4. Also like Ashmann, Riggs described his emotional injuries as follows in his Reply Submission to the Medical Review Panel:

> Emotional injuries are also clearly relevant to this discussion. It is not unreasonable for Dr. Weinberger's patients, after Weinberger fled the country and appeared on "American's Most Wanted," after learning that Dr. Weinberger drilled holes in their maxillary sinuses in the wrong place, and after learning that Dr. Weinberger did not do the surgeries that he said he would do, to be emotionally distraught and injured with feelings of being "duped."

Appellants' App. p. 215.

In June and July 2011, the Weinberger Entities filed respective Motions for Trial Rule 35 Psychological Examinations asking the trial court to compel Ashmann and Riggs to attend psychological examinations. On July 14, 2011, the trial court granted the Weinberger Entities' motion as to Riggs. The trial court's order provides in relevant part as follows:

> The Plaintiff's claims of emotional distress in this case exceed those of the typical Plaintiff who claims emotional injuries arising from physical trauma as a result of another's negligent conduct. The emotional distress claim in this case arises not only from the date of the surgery at issue, but from a Defendant's alleged activities long after the surgery was concluded. The nature of the emotional distress is more akin to negligent infliction of emotional distress, and is not the typical claim for emotional injuries which is evaluated by a jury without the assistance of expert testimony. The Court therefore finds that Plaintiff's claim of emotional distress in this case is more complicated than that presented by the usual injury claim and that the Defendants' request for a psychological examination to evaluate that claim has demonstrated good cause for the evaluation.

Appellants' App. p. 29.

On July 18, 2011, the trial court also granted the Weinberger Entities' motion as to Ashmann. That order provides in relevant part as follows:

> The circumstances in this case are quite similar to those addressed by this Court's order . . . in . . . [Riggs's] case. The Court has also been made aware that a different decision on this issue has been entered in a different case in another Room of the Superior Court. . . .
>
> Each plaintiff's claim must be evaluated separately. As was the situation in the prior case before this Court, the Plaintiff's claims of emotional distress in this case exceed those of the typical Plaintiff who claims emotional injuries arising from physical trauma as a result of another's negligent conduct. The emotional distress claim in this case arises not only from the surgery at issue, but from Defendant Weinberger's alleged activities sometime after the surgery was concluded. The nature of the emotional

4

distress is more akin to negligent infliction of emotional distress, and is not the common claim for emotional injuries that is evaluated by a jury without the assistance of expert testimony. The Court therefore finds that the Plaintiff's claim of emotional distress in this case is more complicated than that presented by the usual injury claim and that the Defendants' request for a psychological examination to evaluate that claim has demonstrated good cause for the evaluation.

Appellants' App. p. 193. Ashmann and Riggs appeal the trial court's grant of these motions.

## DISCUSSION AND DECISION

The standard of review in discovery issues is an abuse of discretion. Old Ind. Ltd. Liability Co. v. Montano ex rel. Montano, 732 N.E.2d 179, 183 (Ind. Ct. App. 2000). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. Wright v. Mount-Auburn Day Care, 831 N.E.2d 158, 162 (Ind. Ct. App. 2005). Discovery matters are fact sensitive, and the trial court's ruling is therefore clothed with a presumption of correctness on appeal. Id.

Parties may obtain discovery regarding any matter relevant to the subject matter involved in the pending action, or which appears reasonably calculated to lead to the discovery of admissible evidence. Stuff v. Simmons, 838 N.E.2d 1096, 1099 (Ind. Ct. App. 2005). Our discovery rules are designed to encourage a liberal discovery procedure to provide parties with information essential to the litigation of all relevant issues, to eliminate surprise and to promote settlement, all with a minimum of court involvement in the process. Id.

Here, the sole issue for our review is whether the trial court abused its discretion by compelling Ashmann and Riggs to submit to psychological examinations pursuant to Trial Rule 35, which provides as follows:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

(Emphasis added). Specifically, Ashmann and Riggs contend that the Weinberger Entities failed to show that 1) Ashmann and Riggs put their mental condition in controversy and 2) the Weinberger Entities had good cause for requesting that Ashmann and Riggs undergo psychological examinations. In support of their contention, Ashmann and Riggs direct us to Stuff, 838 N.E.2d at 1096, where this Court interpreted the "in controversy" and "good cause" language of Trial Rule 35.

In Stuff, Kelly Stuff was injured on April 10, 2002, when Zachary Simmons lost control of his vehicle and crashed into the rear of Kelly's car. After the accident, Kelly was transported to the hospital emergency room where she was treated for neck and back strain. Over the course of the following year, Kelly continued to suffer from and be treated for neck and back pain. After several months of physical therapy, she was referred to a pain management specialist who injected her neck and spine with anti-inflammatories.

6

In December 2003, Kelly and her husband filed a negligence action against Simmons. The complaint alleged that Simmons's negligence resulted in severe and permanent injuries as well as considerable pain and suffering and emotional distress. During the litigation, Simmons's insurer, State Farm, requested that Kelly submit to an independent medical exam pursuant to Indiana Trial Rule 35. Kelly agreed to the request and was examined by Dr. Nukes, who concluded that Kelly was magnifying her symptoms and that a neuropsychological examination should be considered to assist in determining the level of Kelly's symptom magnification. Kelly, however, refused to submit to a psychological examination, and Simmons filed a motion to compel her to do so. Following a hearing, the trial court ordered Kelly to make herself available for the examination.

On interlocutory appeal, this Court reversed the trial court. Specifically, in a matter of first impression, we determined that a general, run-of-the-mill claim of emotional distress does not place a party's mental condition "in controversy." Id. at 1101. Rather, it must be assumed that the plaintiff is experiencing problems more severe than the emotional distress which frequently accompanies personal injuries. Id. Based on established case law in this area from other jurisdictions, we noted that several courts have inferred that plaintiffs can be ordered to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following:

> (1) a cause of action for intentional infliction or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4)

7

plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is in controversy within the meaning of Federal Rule 35.

Id. at 1102.

We also determined that the good cause requirement requires a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case. Id. at 1103. We further cited with approval the Texas Supreme Court's distillation of the good cause requirement into the following three elements:

(1) An examination is relevant to issues that are genuinely in controversy in the case; (2) a party must show a reasonable nexus between the condition in controversy and the examination sought; and (3) a movant must demonstrate that it is not possible to obtain the desired information through means that are less intrusive than a compelled examination.

Id. at 1104.

Applying these requirements to the facts of Stuff, we first noted that Kelly's complaint did not allege a permanent mental injury, a deep-seated emotional disturbance, or psychiatric problems. Id. at 1102. Further, Kelly had never been treated for any type of mental or psychological illness prior to the collision, and Dr. Nukes's conclusion that Kelly was magnifying her symptoms was reached after only a one-hour examination. We found that Dr. Nukes's general conclusion without more did not put Kelly's mental condition in controversy. Id. at 1103. To permit Simmons to compel a mental examination where Kelly made a garden-variety claim of damages for emotional distress would open the door to involuntary mental examinations in virtually all soft tissue injury cases. Id.

8

We further emphasized that Trial Rule. 35 was not intended to authorize sweeping probes into a plaintiff's psychological past merely because she had been injured and made a claim for emotional damages without more. Id. We therefore concluded that the trial court's decision ordering Kelly to submit to the psychological examination was against the logic and effect of the facts and circumstances before it. Id.

Although we could have ended our inquiry at that point due to Simmons's failure to put Kelly's mental condition in controversy, we chose to address the good cause requirement because of the issue's novelty. Id. Simmons did not address the three elements of the good cause requirement. Rather, in order to satisfy this requirement, Simmons referred to Dr. Nukes's opinion as to the possible psychological overlay of Kelly's alleged personal injuries. Simmons continued that should the psychological exam not be completed, the trier of fact would be left with an open-ended opinion from Dr. Nukes without the opportunity for Simmons to properly present his defense to the jury. However, this Court concluded that Simmons's argument would only encourage a "battle of the experts" with each party presenting its own experts at trial. Id. at 1104. We therefore found that Dr. Nukes's evaluation was best left to the province of the jury and concluded that Simmons failed to satisfy the good cause requirement under T.R. 35. Id. Accordingly, we reversed and remanded the case to the trial court for further proceedings. Id.

However, the facts before us are distinguishable from those in Stuff. Whereas Kelly made a mere routine allegation of damages for emotional distress, Ashmann and

9

Riggs both alleged past and future pain, emotional distress, and mental trauma. Further, their replies to the Medical Review Panel emphasized the uniqueness of their emotional distress and injuries where Dr. Weinberger allegedly did not do the surgeries that he said he would do, fled the country, appeared on "America's Most Wanted'" and was found more than five years later living in a tent on the side of a mountain in Italy. Based on these claims of unusually severe emotional distress, we conclude that the trial court did not abuse its discretion when it concluded that Ashmann and Riggs put their mental condition in controversy.

We now turn to the good cause requirement, and the three elements that comprise it. First, because the plaintiffs allege on-going mental trauma that began over eight years ago and is related to Dr. Weinberger allegedly drilling holes in the wrong places in their sinuses, fleeing the country, appearing on "America's Most Wanted," being found living in a tent on the side of a mountain in Italy, and attempting to commit suicide when apprehended, a mental examination is relevant to emotional damages issues that are genuinely in controversy in the case. In addition, the Weinberger Entities have shown a reasonable nexus between the Plaintiffs' emotional distress and damages and the mental examination. Lastly, because the information obtained has to be properly processed and evaluated by a professional, the Weinberger Entities have demonstrated that it is not possible to obtain the desired information through means that are less intrusive than a compelled examination. Based on the foregoing, we cannot say that the trial court

10

abused its discretion in concluding that the Weinberger Entities had good cause for requesting the mental examination.

Having found that Ashmann and Riggs put their mental condition in controversy and that the Weinberger Entities had good cause for requesting the examinations, we find that the trial court did not abuse its discretion in granting the Weinberger Entities' Motions for Trial Rule 35 Psychological Evaluations.

The judgment of the trial court is affirmed, and this cause is remanded for further proceedings consistent with this opinion.

DARDEN, J., and BRADFORD, J., concur.

11